**Copies to:** Judge
AUSA - Special Proceedings
Dft.

AO 243 (Rev. 01/15)

**FILED**

**MAY 1 0 2016**   Page 2

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT

SENTENCE BY A PERSON IN FEDERAL CUSTODY

Clerk, U.S. District and
Bankruptcy Courts

| **United States District Court** | District of the District of Columbia | |
|---|---|---|
| Name *(under which you were convicted)*:<br>  Kevin Duane Bertram | | Docket or Case No.:<br>1:15-cr-00012-ABJ |
| Place of Confinement:<br>  FCC Petersburg Camp, Petersburg, VA | Prisoner No.:<br>44918-083 | |
| UNITED STATES OF AMERICA<br>                              V. | Movant *(include name under which convicted)*<br>  KEVIN BERTRAM | |

## MOTION

1.  (a) Name and location of court which entered the judgment of conviction you are challenging:
United States District Court
Room 6523
333 Constitution Avenue, NW
Washington, DC  20001

   (b) Criminal docket or case number (if you know): 1:15-cr-00012-ABJ

2.  (a) Date of the judgment of conviction (if you know): May 5, 2015

   (b) Date of sentencing: May 5, 2015

3.  Length of sentence: 30 months

4.  Nature of crime (all counts):
Willful Failure to Collect/Pay Over Tax; Failure to Collect, Truthfully Account for, and Pay Over Payroll Taxes in violation of Title 26, United States Code, Section 7202.

5.  (a) What was your plea?  (Check one)
   (1) Not guilty ☐        (2) Guilty ☒        (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or
   what did you plead guilty to and what did you plead not guilty to?

N/A

6.  If you went to trial, what kind of trial did you have? (Check one)  N/A   Jury ☐      Judge only ☐

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?  N/A  Yes ☐      No ☐

8.  Did you appeal from the judgment of conviction?     Yes ☐      No ☒

RECEIVED
Mail Room

MAY   6 2016

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

9. If you did appeal, answer the following:

    (a) Name of court: N/A

    (b) Docket or case number (if you know): N/A

    (c) Result: N/A

    (d) Date of result (if you know): N/A

    (e) Citation to the case (if you know): N/A

    (f) Grounds raised:

    N/A

    (g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☐    No ☒

        If "Yes," answer the following:

        (1) Docket or case number (if you know): N/A

        (2) Result: N/A

        (3) Date of result (if you know): N/A

        (4) Citation to the case (if you know): N/A

        (5) Grounds raised:

        N/A

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

    Yes ☐    No ☒

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court: N/A

        (2) Docket or case number (if you know): N/A

        (3) Date of filing (if you know): N/A

        (4) Nature of the proceeding: N/A

        (5) Grounds raised: N/A

    (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

          Yes ☐    No ☒

    (7)  Result: N/A

    (8)  Date of result (if you know): N/A

(b) If you filed any second motion, petition, or application, give the same information:

    (1)  Name of court: N/A

    (2)  Docket of case number (if you know): N/A

    (3)  Date of filing (if you know): N/A

    (4)  Nature of the proceeding: N/A

    (5)  Grounds raised:

N/A

    (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

          Yes ☐    No ☒

    (7)  Result: N/A

    (8)  Date of result (if you know): N/A

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

    (1)  First petition:   N/A  Yes ☐    No ☐

    (2)  Second petition: N/A  Yes ☐    No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

N/A

12.   For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

AO 243 (Rev. 01/15)

**GROUND ONE:** Prosecutor Engaged in Selective Prosecution of Petitioner

      (a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Selective prosecution occurs when a prosecutor deliberately decides to prosecute based upon an unjustifiable standard, such as race, religion, or political affiliation.

Petitioner was convicted of a an "offense that is infrequently prosecuted", according to the US Guidelines Commentary for the applicable statute under which Petitioner was convicted and sentenced. Of the approximately two million businesses in the United States with unpaid payroll taxes, only two businesses -- and their respective owners -- in the Washington, DC area were prosecuted: one was the top Republican social media firm, and Petitioner's business -- which was widely viewed as the top mobile media firm working for Republicans.

Disturbingly, there are many high-profile Democratic individuals in similar circumstances to Petitioner who owe payroll taxes but have not only been "exempt" from prosecution but have even been invited to the White House for special occasions. One such Democratic individual is Al Sharpton, of whom the New York Times wrote, "appears to have been sustained for years by not paying federal payroll taxes on its employees."

    (b) **Direct Appeal of Ground One:**

        (1)  If you appealed from the judgment of conviction, did you raise this issue?

             Yes ☐     No ☐     N/A

        (2)  If you did not raise this issue in your direct appeal, explain why:

Waived direct appeal as a condition of plea agreement and thus did not file one.

    (c) **Post-Conviction Proceedings:**

        (1)  Did you raise this issue in any post-conviction motion, petition, or application?

             Yes ☐     No ☒

        (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: N/A

Name and location of the court where the motion or petition was filed:

N/A

Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available):

N/A

        (3)  Did you receive a hearing on your motion, petition, or application?

             Yes ☐     No ☐     N/A

        (4)  Did you appeal from the denial of your motion, petition, or application?

             Yes ☐     No ☐     N/A

        (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

             Yes ☐     No ☐     N/A

AO 243 (Rev. 01/15)

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

N/A

Docket or case number (if you know):   N/A

Date of the court's decision:   N/A

Result (attach a copy of the court's opinion or order, if available):

N/A

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

N/A

**GROUND TWO:** Counsel Was Ineffective For Failing to Investigate Material Witnesses and For Representing Petitioner In Spite of an Undisclosed Conflict of Interest

(a)   Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Counsel failed to investigate Frederick Robinson of the IRS -- who told Petitioner that the unpaid payroll taxes could be resolved as a civil matter -- Attorney Margaret Kavalaris -- whose testimony would have undermined the required "willfulness" element -- Attorney Caroline Ciraolo -- who directed Petitioner to pay state payroll taxes instead of federal payroll taxes -- and representatives from Paychex -- who would have confirmed they never provided notification of the termination of the payroll filing service for which they were contracted.

Counsel represented Petitioner from May 30, 2012 to June 8, 2015.  Sometime after June 5, 2014, Counsel was being vetted to be the Assistant Attorney General for the Tax Division of the Department of Justice.  President Obama formally announced his nomination on February 24, 2015.  At no time was this conflict disclosed to Petitioner.

(b)   **Direct Appeal of Ground Two:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐        No ☐   N/A

(2)   If you did not raise this issue in your direct appeal, explain why:

Waived direct appeal as a condition of plea agreement and thus did not file one.

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐        No ☒

    (2)  If you answer to Question (c)(1) is "Yes," state: N/A

Type of motion or petition: N/A

Name and location of the court where the motion or petition was filed:

N/A

Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available):

N/A

---

    (3)  Did you receive a hearing on your motion, petition, or application?

        Yes ☐    No ☐    N/A

    (4)  Did you appeal from the denial of your motion, petition, or application?

        Yes ☐    No ☐    N/A

    (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐    No ☐    N/A

    (6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

N/A

Docket or case number (if you know):

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available):

N/A

    (7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

N/A

---

**GROUND THREE:** Petitioner's Actions Were Not "Willful", Making Him Actually Innocent

---

    (a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The crime of which Petitioner was convicted requires as an element that he willfully failed to collect/pay over tax/payroll tax.

Evidence clearly establishes that the company Petitioner hired to manage all of his company's payroll requirements and needs failed to notify him that the firm was discontinuing/had discontinued ONLY the part of their contractual agreement which required them to file the payroll form and pay the payroll tax. Further, witness

AO 243 (Rev. 01/15)                                                                                                  Page 8

affidavits from two of Petitioner's retained attorneys demonstrate that Petitioner emphasized in his conversations with them that he desired to comply with applicable tax/payroll tax laws, and one of those attorneys even advised Petitioner to pay the state-owed taxes instead of the federal-owed taxes after he became aware that the payroll taxes had not been paid.  At maximum, his attorney told him, the Government may pursue a civil matter to rectify the deficiency.

(b) **Direct Appeal of Ground Three:**

   (1)  If you appealed from the judgment of conviction, did you raise this issue?

   Yes ☐      No ☐      N/A

   (2)  If you did not raise this issue in your direct appeal, explain why:

   Waived direct appeal as a condition of plea agreement and thus did not file one.

(c) **Post-Conviction Proceedings:**

   (1)  Did you raise this issue in any post-conviction motion, petition, or application?

   Yes ☐      No ☒

   (2)  If you answer to Question (c)(1) is "Yes," state:

   Type of motion or petition:  N/A

   Name and location of the court where the motion or petition was filed:
   N/A

   Docket or case number (if you know):

   Date of the court's decision:  N/A

   Result (attach a copy of the court's opinion or order, if available):

   N/A

   (3)  Did you receive a hearing on your motion, petition, or application?

   Yes ☐      No ☐      N/A

   (4)  Did you appeal from the denial of your motion, petition, or application?

   Yes ☐      No ☐      N/A

   (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

   Yes ☐      No ☐      N/A

   (6)  If your answer to Question (c)(4) is "Yes," state:

   Name and location of the court where the appeal was filed:
   N/A

   Docket or case number (if you know):  N/A

   Date of the court's decision:  N/A

   Result (attach a copy of the court's opinion or order, if available):

   N/A

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this
issue:

N/A

---

**GROUND FOUR:**   N/A

---

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

N/A

---

(b)   **Direct Appeal of Ground Four:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?
    Yes ☐        No ☐   N/A

(2)   If you did not raise this issue in your direct appeal, explain why:

N/A

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?
    Yes ☐        No ☐   N/A

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:  N/A

Name and location of the court where the motion or petition was filed:
N/A

Docket or case number (if you know):  N/A

Date of the court's decision:  N/A

Result (attach a copy of the court's opinion or order, if available):

N/A

AO 243 (Rev. 01/15)                                                                                      Page 10

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐      No ☐   N/A

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐      No ☐   N/A

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐      No ☐   N/A

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

N/A

Docket or case number (if you know):   N/A

Date of the court's decision:  N/A

Result (attach a copy of the court's opinion or order, if available):

N/A

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

N/A

13. Is there any ground in this motion that you have not previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

Every ground raised herein requires evidence never presented to the District Court. Because new facts may not be presented on direct appeal, collateral review is the appropriate vehicle to raise all of these issues.

14. Do you have any motion, petition, or appeal now pending (filed and not decided yet) in any court for the you are challenging?      Yes ☐    ·    No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

N/A

AO 243 (Rev. 01/15)                                                                                                              Page 11

15. Give the name and address, if known, of each attorney who represented you in the following stages of the you are challenging:

(a) At the preliminary hearing: Jessie Liu of Jenner + Block
1099 New York Ave., NW, Suite 900, WDC  20001-4412

(b) At the arraignment and plea: Jessie Liu of Jenner + Block
1099 New York Ave., NW, Suite 900, WDC  20001-4412

(c) At the trial: N/A

(d) At sentencing: Jessie Liu of Jenner + Block
1099 New York Ave., NW, Suite 900, WDC  20001-4412

(e) On appeal: N/A

(f) In any post-conviction proceeding: N/A

(g) On appeal from any ruling against you in a post-conviction proceeding:

N/A

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court
and at the same time?          Yes ☐          No ☒

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are
challenging?          Yes ☐          No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

N/A

(b) Give the date the other sentence was imposed: N/A

(c) Give the length of the other sentence: N/A

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or
sentence to be served in the future?          Yes ☐          No ☒

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain
why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

Motion timely filed in accordance with § 2255(f)(1).

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

    (1)   the date on which the judgment of conviction became final;

    (2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

    (3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

AO 243 (Rev. 01/15)                                                                                          Page 13

Therefore, movant asks that the Court grant the following relief:

An evidentiary hearing to determine: (1) whether the prosecutor engaged in
     unlawful selective prosecution and (2) whether counsel was ineffective.
or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion
under 28 U.S.C. § 2255 was placed in the prison mailing system on _____ May 4, 2016 _____.
                                                                                              (month, date, year)

Executed (signed) on ___ May 4, 2016 ___ (date)

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KEVIN DUANE BERTRAM, | ) | Case No. _____ |
| Petitioner, | ) | 1:15-cr-00012-ABJ |
| v. | ) | MEMORANDUM IN SUPPORT OF |
| UNITED STATES OF AMERICA, | ) | MOTION TO VACATE, SET ASIDE, |
| Respondent. | ) | OR CORRECT A SENTENCE |
| | ) | (28 U.S.C. § 2255) |

## RELIEF REQUESTED

NOW COMES, PETITIONER KEVIN DUANE BERTRAM, pro se pursuant to Haines v.
Kerner, 404 U.S. 519, 520–21 (1972)(motion must be taken in the light most
favorable to pro se movant and held to less stringent standards than a motion
filed by an attorney), and respectfully moves this Honorable Court to vacate,
set aside, or correct a sentence because Petitioner is being held in
violation of his First Amendment right to be free from selective prosecution,
in violation of the Sixth Amendment to the effective assistance of counsel,
and in spite of his actual innocence of the crime for which he was convicted.

## JURISDICTION AND TIMELINESS

This motion is filed timely within one year of May 5, 2015, the day
Petitioner's conviction became final, and is timely pursuant to 28 U.S.C. §
2255(f)(1). Petitioner is not barred by any provision in the Anti–Terrorism
and Effective Death Penalty Act (AEDPA), and this Court is Petitioner's
sentencing court. Further, Petitioner's plea agreement did not waive any of
the arguments raised herein. Thus, this Court has jurisdiction to hear this
motion.

## STATEMENT OF FACTS

Petitioner operated Distributive Networks from 2004 through 2010. In
2005 -- when Petitioner hired employees to work for Distributive Networks --
Petitioner contracted the firm Paychex to manage and pay all of Distributive
Networks' applicable payroll taxes on behalf of the company.

Paychex fulfilled their entire contractual obligation to perform tasks
such as filing W2s, printing payroll checks, and performing all other payroll

duties from 2005 through 2007, when -- although unknown to Petitioner at the time -- they stopped filing the applicable Form 941 Payroll Tax Form. Paychex continued all of their other duties through 2010, but -- without any notice provided to Petitioner -- they failed to file Form 941 from 2007 through 2010.

On January 26, 2015, Petitioner was charged with Willful Failure to Collect/Pay Over Tax:Failure to Collect, Truthfully Account For, and Pay Over Payroll Taxes in violation of Title 26, United States Code, Section 7202, a crime "infrequently prosecuted", according to the US Sentencing Guidelines.

On February 10, 2015, Petitioner plead guilty to the only count in the criminal information and was subsequently sentenced to 30 months on May 5, 2015.

Petitioner now files this timely Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. § 2255 for all the reasons listed below.

CAUSE AND PREJUDICE

"In Bousely [v. United States, 523 U.S. 614, 622 (1998)], the [Supreme] Court explained that, '[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either [1] 'cause' and actual 'prejudice,' ... or [2] that he is 'actually innocent.' Id.' at 622 (citations omitted); see also McQuiggin v. Perkins, 133 S.Ct. 1924, 1931-32, 185 L.Ed.2d 1019 (2013)." United States v. Baxter, 761 F.3d 17, 27-29 (D.C. Cir. 2014).

Petitioner's Ground Two includes two arguments and explanations of counsel's ineffectiveness in violation of his Sixth Amendment right. The D.C. Circuit Court and the Supreme Court have long-held that "[a] defendant is permitted to bring an ineffective assistance claim for the first time in his § 2255 hearing, Massaro v. United States, 538 U.S. 500, 508-09, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), even though [the D.C. Circuit] court

2

would permit him to raise the claim in his direct appeal." <u>United States v. Matthis</u>, 503 F.3d 150, 153 n.1 (D.C. Cir. 2007).

As Petitioner demonstrates herein, but for counsel's deficient performance, Petitioner would have declined a plea agreement and prepared for trial.

Ground Three involves an argument establishing Petitioner's actual innocence and thus cannot be procedurally barred in any way and must be adjudicated on the merits. See <u>Baxter</u>, at 26.

Unlike Grounds Two and Three, the prosecutorial misconduct argument raised in Ground One would normally be procedurally barred on collateral review. However, this is the exception to that rule. As the Sixth Circuit recently held regarding a similar claim of selective enforcement, "Among the most serious allegations a federal court can address are that an Executive agency has targeted citizens for mistreatment based on their political views. No citizen Republican or Democrat, socialist or libertarian should be targeted or even have to fear being targeted on those grounds." <u>United States v. Norcal Tea Party Patriots, et al.</u>, Appeal No. 15-3793 (6th Cir. March 22, 2016).

Not only is Petitioner's Ground One a case of such importance that a procedural bar would permit such an important issue to remain unaddressed, but this error also resulted in Petitioner's conviction in spite of his actual innocence. See <u>United States v. Wilson</u>, 15 F.Supp. 3d 126 (D.D.C. Feb. 19, 2014)("A court may consider a claim that is procedurally barred only if the defendant can show that the error 'has probably resulted in the conviction of one who is actually innocent.'")(quoting <u>Bousely</u>, 523 U.S., at 623 and <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)).

<u>ARGUMENT</u>

**STANDARD OF REVIEW**

Section 2255 provides that an evidentiary hearing <u>shall</u> be granted

3

"unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." United States v. Weaver, 234 F.3d 42, 46 (D.C. Cir. 2000)(quoting 28 U.S.C. § 2255).

A selective prosecution claim requires (1) proof that the prosecutor acted with bad intent, and (2) that "similarly situated individuals [outside the protected category] were not prosecuted." Moore v. Hartman, et al., 388 F.3d 871, 880 (D.C. Cir. 2004)(quoting United States v. Armstrong, 517 U.S. 456, 465 (1996)).

"A defendant asserting an ineffective assistance of counsel claim must show (1) that defense counsel's performance was deficient and (2) that counsel's deficient performance affected the outcome of the defendant's case. See Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." United States v. Wright, 745 F.3d 1231, 1233 (D.C. Cir. 2013).

A criminal defendant's right to effective assistance of counsel extends to the plea bargaining process. Lafler v. Cooper, ___ U.S. ___, ___, 132 S.Ct. 1376, 1384 (2012). "Where the alleged error is failure to investigate ... , the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence [or witness testimony] ... would have changed the outcome of a trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). "In Cuyler v. Sullivan, the Supreme Court held that a defendant who asserts a conflict of interest claim ... in habeas proceedings generally must demonstrate only that an actual conflict of interest adversely affected his lawyer's performance. 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). The defendant typically need not demonstrate the second prong of the Strickland test – that the lawyer's deficient performance affected the outcome of the case. See Id. at 349-50." Wright, at 1233.

To demonstrate actual innocence of a conviction, the defendant must show that "in light of all the evidence, it is more likely than not that no

4

reasonable juror would have convicted him." United States v. Caso, 723 F.3d 215, 218-19 (D.C. Cir. 2013)(quoting Murray v. Carrier, 477 U.S. 478, 4966 (1986) and Schlup v. Delo, 513 U.S. 298, 327-28 (1995)).

## PROSECUTOR ENGAGED IN SELECTIVE PROSECUTION OF DEFENDANT BASED ON HIS POLITICAL AFFILIATION

It is well-established that the crime for which Petitioner stands convicted is one that is "infrequently prosecuted". See United States Sentencing Guidelines Section 2T1.6, Commentary, Background (attached as Exhibit 1).

What's more -- as Petitioner demonstrates below -- he had a better chance of winning the Powerball than being criminally prosecuted under Title 26, United States Code, Section 7202.

According to a report submitted by the Government Accountability Office in July of 2008, there were over 1.6 million businesses that owed over $58 billion in unpaid payroll taxes. See Exhibit 2. That number is widely estimated to have increased to approximately two million (2,000,000) businesses during the economic crisis. A great many of these are high-profile individuals affiliated with the Democratic party, including the following:

According to The New York Times, Al Sharpton's National Action Network "appears to have been sustained for years by not paying federal payroll taxes on its employees." Exhibit 3. Not only has Mr. Sharpton avoided prosecution, he was "among a small group at the White House when [President] Obama announced his nomination of Loretta E. Lynch" to become the next Attorney General. Id.

Timothy Geithner, while he was working for the International Monetary Fund (I.M.F.), failed "to pay his payroll taxes, [and] he in effect kept the money the I.M.F. had contributed toward his liability." The New York Times, Exhibit 4. Mr. Geithner served as President Obama's Secretary of Treasury and has avoided any consequence for his actions, least of all prosecution.

The New Republic reported that Seth Bannon -- "an Obama campaign alumnus" whose company helped "nonprofits like the AFL-CIO and the Texas Democratic Party" -- "owed the IRS roughly half a million dollars because it hadn't paid payroll taxes for several years." Exhibit 5. Mr. Bannon was permitted to pay the back taxes and was never prosecuted.

Democratic party Chairman Randy Voller owes "more than $225,000 to the federal government for several years of unpaid [payroll] taxes." The North Capitol, Exhibit 6. Mr. Voller remains active in politics and escapes prosecution to this day.

Tax lien records indicate that Texas Democrat State Representative Mark Homer "failed to pay over $145,000 in federal payroll taxes for a company he owns." Exhibit 7. The US Attorney has not prosecuted Mr. Homer.

Likewise, the IRS has not referred Eric Kearney -- who had been a Democratic candidate for Lt. Governor in Ohio -- for prosecution, although The Columbus Dispatch report exposing that he owed more than $825,000 in unpaid payroll taxes did lead to his withdrawal from the race. Exhibit 8.

Democratic City Councilman Paul Riddick continues to represent Ward 4 in Norfolk, Virginia in spite of The Virginia Pilot's article reporting that his business "failed to pay more than $200,000 in employment taxes over the past 14 years." Exhibit 9.

Out of these 2,000,000 businesses that owe unpaid payroll taxes, less than 100 are charged with the applicable felony each year, according to the IRS Statistical Data on Employment Tax Evasion. See Exhibit 10. Of those that are charged, according to Margaret Leigh Kessler -- assistant chief (western criminal enforcement section), Department of Justice (DOJ) Tax Division, "she has not seen many cases come across her desk in which the money was used only to keep the business afloat, but noted ... there are many different factors that may cause the IRS to refer a case to the DOJ for criminal prosecution, including engaging in a course of illegal conduct over a long period; taking aggressive measures to actively hide assets once the

6

Service has determined noncompliance; and lying to the IRS agents reviewing the case." Tax Notes Today, September 24, 2013, Exhibit 11.

Petitioner did not engage in any of the conduct that usually leads to referrals of criminal prosecution, further lowering his personal chances of being prosecuted for this felony that is "infrequently prosecuted."

In fact, without taking the lack of conduct that more often leads to prosecution into account, Petitioner only had a 92 in 2 million -- or one in 21,739 -- chance of being prosecuted for this felony. See Exhibit 12.

Really, though, his chances were far less than that. During the years of 2010-2012, only two businesses and their respective owners from the Washington, DC area were prosecuted for this crime: Frank Bivings and Isabelle Blanco of The Bivings Group -- widely viewed as the top Republican social media firm -- and Petitioner, the owner of Distributive Networks and Tusk Mobile -- widely viewed as the top mobile media consultant working for Republicans. See Exhibit 13.

Considering the population of the United States, the population of the Washington, DC area, the number of businesses in violation of the applicable statute, and the very low rate of criminal prosecution, both of these Republican-affiliated businesses being prosecuted within such a short time -- being the ONLY businesses in the DC area to be prosecuted AT ALL from 2010-2012 -- is a chance of about one in 350,000,000 (1 in 350 million). See Exhibit 12. One has a better shot of hitting the Powerball (a chance of one in 269,000,000 (1 in 269 million). Id.

Taking everything above into account, the chances of Petitioner being prosecuted after the owners of the 2011 prosecution of the Bivings Group are probably closer to one in 5,000,000,000 (1 in 5 billion).

As far as selective prosecutions go, the numbers above are really a statistical "smoking gun". At minimum, Petitioner has established that "similarly situated individuals [outside the protected category of Republican-affiliated businesses] were not prosecuted." Moore, at 880.

To demonstrate that the US Attorney engaged in selective prosecution, Petitioner must still demonstrate that the prosecutor acted with bad intent. Id.

Not only are the above numbers themselves sufficient to establish that the prosecutor in Washington, DC was targeting top Republican-affiliated new media firms, but an equally -- if not more -- disturbing piece of evidence came in the interview where Petitioner first learned that the company he had retained to manage and satisfy all payroll obligations -- Paychex -- had stopped its contractual duty to file Form 941, the applicable federal payroll tax form.

In this interview with IRS agents/consultants, Emily S. Taylor and Mary C. Balberchak first questioned Petitioner about the business they were investigating -- Distributive Networks, LLC -- but then they began asking probing questions regarding Petitioner's other business -- Tusk Mobile, LLC -- which was not under investigation. They asked about his work for Republican candidates and eventually asked, "So, after working for President Obama, why did you begin working for the President's enemies?" Affidavit Exhibit 14, ¶s 9-11. Later, the agents asked Petitioner whether he "would be working for the 2012 election." Id. ¶ 13. After Petitioner responded that -- because the unannounced interview and disturbing line of questioning had shaken him -- he would not. Id. ¶ 14. The agent "replied that not participating in the election process on behalf of the Republican Party 'is a smart move.'" Id. ¶ 15.

This agent's improper conduct has resulted not only in an interview between TIGTA Special Agent Erich Farag and Petitioner, it has also led to an open criminal investigation of the agent who asked the politically-motivated questions (Case No. #54-1506-0019-C). Id. ¶s 17-18.

Perhaps most importantly, it is a clear indicator as to why the over-the-top-lottery-odds of being prosecuted or referred for prosecution for failing to pay over payroll taxes went against the Petitioner. He

8

was -- in the view of the IRS, who referred him for prosecution -- "working for the President's enemies [the Republicans]."

"The Supreme Court has made clear, 'the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Moore, at 879-880 (quoting Wayte v. United States, 470 U.S. 598, 608 (1985)). The DC Circuit Court has opined that "the First Amendment prohibits such targeted prosecutions" "brought only because the defendant is, say, a peace activist, a Klan member, a Democrat, or a Republican." Moore, at 879.

Once a showing has been made -- as it has here -- that prosecutors acted with bad intent and that similarly situated individuals outside the protected category were not prosecuted, "the accused has a defense to the charges. See United States v. Mangieri, 224 U.S. App. D.C. 295, 694 F.2d 1270, 1273 (D.C. Cir. 1982); United States v. Steele, 461 F.2d 1148, 1151-52 (9th Cir. 1972)." Moore v. Hartman, et al., 388 F.3d 871, 880 (D.C. Cir. 2004).

In this situation, the selective prosecution doctrine supports the view "that constraints on prosecutorial motive  may at times override the interest in punishing objectively culpable conduct." Moore, at 880.

Because these facts, if proven true, would entitle Petitioner to relief, an evidentiary hearing is warranted to establish the selective prosection of Republican-affiliated businesses.

### BUT FOR COUNSEL'S FAILURE TO INVESTIGATE KEY WITNESSES, PETITIONER WOULD HAVE DECLINED THE PLEA AND PREPARED FOR TRIAL

Although "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance," United States v. Valencia-Rios, 639 F.Supp.2d 98, 104 (D.D.C. Aug. 5, 2009)(quoting Knowles v. Mirazayance, 129 S.Ct. 1411, 1419 (2009) and Strickland v. Washington, 466 U.S. 668, 689 (1984)), "[d]uring the course of representation, counsel owes to [his] client several duties, and a substantial breach of any of the duties owed amounts to deficient performance." Valencia-Rios, at 104 (citing United

States v. DeCoster, 487 F.2d 1197, 1203-04, 159 U.S. App. D.C. 326 (D.C. Cir. 1973)).

One of such duties is a duty to investigate evidence and witnesses.   See Valencia-Rios, at 104 (citing Kimmelman v. Morrison, 477 U.S. 365, 384 (1986)).

Petitioner hired Counsel Cono Namorato after learning from the IRS Criminal Investigator Agents that he was being criminally investigated for his failure to pay over payroll taxes (See Exhibit 14, ¶ 5) and after becoming aware what Namorato specialized in -- as he himself explained to the Washingtonian, "Namorato sees his role as settling matters before indictments come up.  'The IRS wins convictions in 90 percent of their cases,' he says.  'So you don't want things to get to that point.  You have to be able to have a dialogue.'" (See Exhibit 15) and as he confirms again in the questionnaire for non-judicial nominations when he was nominated for Assistant Attorney General of the Tax Division for the US Department of Justice (See Exhibit 16).

Although Namorato made these claims that he specialized in negotiations that helped minimize IRS referrals for prosecution, Namorato's efforts -- which had the appearance of adequate performance at first -- there was an obvious marked decrease in the quality of representation at some point in 2013. See Exhibit 17, ¶ 3-6.

Namorato failed to perform the necessary investigation of the following key witnesses, which would have completely dissuaded Petitioner from entering a plea of guilty because :

(1)  Frederick Robinson, IRS auditor, told Petitioner during an audit of his personal income tax for tax year 2007 that (1) Petitioner had not yet been designated a "responsible person", (2) that Petitioner should wait to pay the unpaid payroll taxes until he was designated, (3) and that Petitioner should not apply his personal income tax refund to the unpaid payroll taxes because he had not yet been designated a "responsible party" in a civil matter under

10

26 U.S.C. § 6672.  See Exhibit 18, ¶s 1, 3, and 5.

(2)  Attorney Margaret Kavalaris -- who was retained by Petitioner in early 2008 -- later wrote an affidavit at the request of Petitioner explaining that Petitioner regularly advised her that his top priorities were "i) protecting the employees and the talent necessary to grow the Company, ii) honoring all federal and state payroll tax obligations." Exhibit 19, ¶ 4.  She also explained that a business loan Petitioner sought during the most severe financial crisis since the 1930s was extremely disadvantageous to Petitioner personally, but he accepted the offer anyway because he lacked options, "need[ed] to make payroll and preserve personnel and talent and ... to make payroll taxes." Id., ¶s 5-7.  This testimony was available to Counsel Namorato, but he failed to investigate it and therefore failed to obtain same.

(3)  Caroline Ciraolo -- who is now the Acting Assistant Attorney General for the Department of Justice Tax Division -- advised Distributive Networks to pay the Maryland State payroll taxes instead of the federal payroll taxes. See Exhibit 20.  Namorato failed to investigate this critical witness and the advice she gave Petitioner.

(4)  Paychex -- which was contracted by Petitioner for Distributive Networks to manage and satisfy all payroll obligations, including filing W2s, filing Form 941, and printing payroll checks.  See Exhibit 17, ¶ 8.  This witness would have documented that Paychex stopped filing Form 941 without providing any notice to Petitioner but continued to perform all of its other contractual duties it was hired to do.  Exhibit 21, ¶s 1, 2, 3.  In fact, Petitioner only learned of Paychex's failure to file Form 941 when the IRS Criminal Investigators came unannounced to interview him at his home. Exhibit 14, ¶ 7.

Had Petitioner had the benefit of the above-witness testimony -- which Counsel Namorato failed to investigate -- he would not have felt like he lacked evidence to prove his innocence, and he would have declined the plea

11

agreement and prepared for trial.  Exhibit 17, ¶ 14.

Certainly, Petitioner has made a colorable showing of the violation of his Sixth Amendment right to the effective assistance of counsel -- having presented evidence from outside the record that his counsel failed to investigate key witnesses and that he would not have plead guilty but for that deficiency -- warranting an evidentiary hearing to establish the facts.

### COUNSEL REPRESENTED PETITIONER IN SPITE OF A CONFLICT OF INTEREST

Unlike most ineffective assistance of counsel claims, conflicts of interest only require Petitioner to demonstrate the first of the Strickland prongs and does not require the second.  See United States v. Wright, 745 F.3d 1231, 1233 (D.C. Cir. 2013)(quoting Cuyler v. Sullivan, 446 U.S. 335, 338 (1980)).

As noted above, the quality of Namorato's representation decreased significantly in 2013.  See Exhibit 17, ¶s 3-6.  Counsel Namorato represented Petitioner from May 30, 2012 through June 8, 2015.  Exhibit 17, ¶ 1.

On February 24, 2015 -- several months before Namorato's representation of Petitioner ended -- President Obama publicly announced his nomination of Cono Namorato for the next Assistant Attorney General of the Department of Justice's Tax Division.  See Exhibit 22.  While it is unclear at what point the commonly-known lengthy vetting and selection process began for Namorato, it is clear that his performance as counsel decreased significantly part way through 2013.  This period of time tracks too closely to be a mere coincidence.

Despite Namorato's claims of his success in negotiating on behalf of clients the IRS is considering pursuing criminally, he was -- at the very same time -- preparing to fill a position AT THE HEAD OF THE VERY DEPARTMENT THAT PROSECUTED PETITIONER -- the very Agency that Namorato was supposed to be negotiating with to defer prosecution.

This is abhorrent conduct for any attorney, but -- what's worse -- Counsel Namorato NEVER INFORMED PETITIONER OF THIS CONFLICT!

Vetting for a position at the head of an agency prosecuting Petitioner is the height of a conflict of interest, and Namorato's failure to divulge this conflict to Petitioner is unfathomable.

There is no question that a lawyer attempting to become the head prosecutor of an agency would not want to risk his chances of that desired position by zealously representing his defendant-client who is at odds with the agency.  When Petitioner learned of Namorato's nomination, the drop in performance finally made sense to him.  Clearly, this undivulged conflict of interest affected Namorato's performance as a defense attorney on behalf of Petitioner.

Having sufficiently alleged a conflict of interest in accordance with Wright and Cuyler ("defendant who asserts a conflict of interest claim ... in habeas proceedings generally must demonstrate only that an actual conflict of interest adversely affected his lawyer's performance."), an evidentiary hearing to weigh the facts is warranted.

## PETITIONER'S ACTIONS WERE NOT "WILLFUL", MAKING PETITIONER ACTUALLY INNOCENT

To demonstrate actual innocence of a conviction, the defendant must show that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." United States v. Caso, 723 F.3d 215, 218-19 (D.C. Cir. 2013)(quoting Murray v. Carrier, 477 U.S. 478, 4966 (1986) and Schlup v. Delo, 513 U.S. 298, 327-28 (1995)).

As with all criminal prosecutions, the burden is on the Government to establish the defendant's guilt of every required element in the statute.  In this case, statute 26 U.S.C. § 7202 requires the following two (2) elements:

"[(1)] Any person required under this title to collect, account for, and pay over any tax imposed by this title [(i.e. a "responsible person"), and (2)] who willfully fails to collect or truthfully account for and, pay over such tax."

26 U.S.C. § 7202.  See Exhibit 23.

The US Sentencing Guidelines further explains, "The failure to collect or truthfully account for the tax must be willful, as must the failure to

13

pay." U.S. Sentencing Guidelines § 2T1.6, Commentary, Background. See Exhibit 1.

Without Petitioner's <u>willfulness</u> in truthfully accounting for the tax **AND** his <u>willfulness</u> in failng to pay, he **CANNOT** be found guilty of a crime under § 7202. Willfulness in this context is defined as "a voluntary, intentional violation of a known legal duty." <u>United States v. Pomponio</u>, 429 U.S. 10, 24 (1976).

As already established, Petitioner contracted Paychex on October 26, 2005 on behalf of Distributive Networks, LLC "to prepare, sign, and file with proper taxing authorities all returns for such taxes on an ongoing basis," as well as for other payroll needs (quoting the exact language in the contract). Exhibit 21, ¶ 1 and Ex. 21, Attachment A. This contractual agreement remained in place until July 30, 2010. <u>Id</u>.

Petitioner also engaged Paychex for the same services for his other business, Tusk Mobile, LLC. See <u>Id</u>., ¶ 5. Although Paychecks successfully fulfilled <u>EVERY</u> aspect of its contract with Tusk Mobile -- including filing Form 941 (<u>Id</u>., ¶ 6) -- <u>AND</u> it continued to fulfill its contract with Distributive Networks in <u>NEARLY</u> every respect -- for some unknown reason stopping only its filing of Form 941 for Distributive Networks (<u>Id</u>., ¶s 2- 3) -- it never provided notice that it was going to stop or did stop filing Form 941 for Distributive Networks. <u>Id</u>., ¶ 2. Importantly, the first time Petitioner became aware that Paychex stopped filing Form 941 on behalf of Distributive Networks was when IRS Criminal Investigators came to his home unannounced and told him. Exhibit 14, ¶ 7.

Later, when Gemini Partners acquired Distributive Networks, LLC on July 31, 2010, Petitioner represented that -- as he genuinely thought at the time -- that the owners of Distributive Networks "have duly and timely filed all Tax Returns relating to the Business with respect to Covered Taxes required to be filed on or before the Closing Date." Exhibit 24, an acquisition document provided during the transfer. The fact that -- in

14

Petitioner's very next sentence in that document -- he accurately represents that Distributive Networks "remain[s] obligated for outstanding and unpaid Withholding Taxes to the federal government," establishes the credibility of his good faith belief that all required tax forms were filed.

After selling Distributive Networks to Gemini Partners, Petitioner retained attorney Lawrence Garr of the law firm Dickstein Shapiro to further assist him in "resolv[ing] delinquent federal and state payroll taxes for his company, Distributive Networks." Exhibit 25, ¶s 1-2. Mr. Garr advised Petitioner that, in the worst case scenario, "the IRS would eventually assess Distributive Networks' outstanding payroll liabilities against him in his individual capacity as a responsible person under 26 U.S.C. § 6672." Id., ¶ 4. Several weeks after retaining Mr. Garr, Petitioner received a notice from the IRS addressed to "Kevin Bert**MAN**" (Petitioner's name is Kevin Bert**RAM**), and the IRS had sent the notice to an address not used by the business for more than five (5) years. Because of these errors, both Petitioner and Mr. Garr thought the notice was in error, and Mr. Garr "did not take any further action, nor did [he] advise [Petitioner] to take any further action." Id., ¶ 6. Importantly, Mr. Garr reflects, "In retrospect, it is clear to me that [Petitioner] believed that his company had filed the appropriate tax returns, that he took the delinquency seriously, and that he wanted to pay what was owed." Id., ¶ 6.

Clearly, Petitioner's unawareness that Form 941 had not been filed is reasonable and credible, and evidence reflects that unawareness as he sought options to rectify the unpaid payroll taxes. Logically, one cannot be unaware on one hand AND voluntary and intentional on the other at the same time. Ergo, Petitioner's belief that Form 941 had been filed by the company contracted to do so is a complete defense that establishes he did not willfully (voluntarily and intentionally) forego the filing of Form 941. Petitioner cannot be guilty of the crime for which he stands convicted.

As to Petitioner's willfulness to pay the payroll taxes, his actions

were negligent at worst. Federal courts have "expressly distinguished negligence from willfulness ... and [have] instructed the jury that negligent acts cannot form the basis for a violation of § 7202." United States v. Lord, 404 Fed. Appx. 773, 778 (4th Cir. 2010)(emphasis added).

As previously noted, Section 7202 -- under which Petitioner was convicted -- "require[s] a 'willful' violation of the code, and [is] therefore among the criminal tax offenses that require specific intent." United States v. Crabbe 364 Fed. Appx. 412, 417-418 (10th Cir. 2010).

Already demonstrated is the fact that Petitioner's other company, Tusk Mobile, was completely compliant with all of the payroll tax code, including both the filing of Form 941 and the remission of payments. Exhibit 21, ¶s 5-6. This is important because federal courts have found that a defendant's faithful compliance with a concurrent tax responsibility is a factor to be weighed in assessing willfulness. See United States v. Blanchard, 618 F.3d 562, 573-74 (6th Cir. 2010)(allowing jury to consider compliance with other tax regime as factor regarding against finding willful violation of federal tax obligations).

Importantly, relying on and following professional advice is an absolute defense that negates willfulness. See United States v. Bishop, 291 F.3d 1100, 1106-07 (9th Cir. 2002). As demonstrated throughout this brief and below, Petitioner completely relied on the professional advice of an IRS auditor and three reputable attorneys.

As soon as Petitioner became aware that Paychex had stopped paying Distributive Network's payroll taxes, he immediately retained Margaret Kavalaris, who later declared under penalty of perjury that -- during the most severe financial crisis since the 1930s -- Petitioner accepted a loan offer that was extremely disadvantageous to him personally but helpful to Distributive Networks because of the "i) lack of alternatives, ii) the need to make payroll and preserve personnel and talent and iii) to make payroll taxes." Exhibit 19, ¶s 2 and 7. To further address the issue, Petitioner

"hired Jeff Lee, an experienced professional described in the Company press release as experienced in handling 'strategic planning, finance and operations'" because Petitioner was intensely focused on the presidential campaign on behalf of Obama for America. Id., ¶ 3. See also Exhibit 26. At no time did Ms. Kavalaris express that the failure to pay over federal payroll taxes was anything more than a civil matter and certainly not a criminal matter.

In 2009, Petitioner hired Avant Partners for the purpose of "[r]eviewing current outstanding liabilities of the Company related to Delinquent Payroll Taxes, including assessing the Company's compliance with all internal revenue and state and local tax authority statutes ... and assisting the Company with development of a strategic plan to resolve any issues related thereto, including, without limitation, timely and complete satisfaction of all of its current outstanding liabilities with respect thereto [and] [r]ecommending and working with legal counsel to the Company to resolve current outstanding liabilities related to the Delinquent Payroll Taxes." Exhibit 27, ¶s g and h.

At the same time, Petitioner retained counsel Caroline Ciraolo -- who is now the Acting Assistant Attorney General for the Department of Justice Tax Division (head of the DOJ Tax Division) -- and she expressly advised Petitioner not to pay the owed federal payroll taxes but directed him instead to pay the delinquent Maryland State payroll taxes. See Exhibit 20. Petitioner's reliance on this advice, especially from this very reputable source, cannot be considered a willful failure to pay because his reliance on the fact that such a reputable source would not advise him to perform an illegal activity means that the failure to pay was not an intentional violation of a known duty, as described by the Supreme Court in Pomponio, at 24.

As previously demonstrated, IRS auditor Frederick Robinson told Petitioner that (1) Petitioner had not yet been designated by the IRS as a "responsible person", (2) Petitioner should wait to pay the unpaid federal

payroll taxes on behalf of Distributive Networks until he was designated, and (3) Petitioner should not apply his personal income tax refund to the unpaid payroll taxes because he had not yet been designated a "responsible person" in a civil matter under 26 U.S.C. § 6672.  See Exhibit 18, ¶s 1, 3, and 5.

Following the acquisition of Distributive Networks in 2010, Petitioner established DN Wrapup to pay all of Distributive Networks' outstanding liabilities, including the federal payroll tax liability.  See Exhibit 28.

As noted above, in 2011, Petitioner retained attorney Lawrence Garr and informed him that "Distributive Networks was behind in paying over federal payroll taxes to the Internal Revenue Service." Exhibit 25, ¶ 2.  Mr. Garr "explained to [Petitioner] that the IRS would eventually assess Distributive Networks' outstanding payroll liabilities against him in his individual capacity as a responsible person under 26 U.S.C. § 6672.  [Mr. Garr] advised [Petitioner] that he could wait until then before making arrangements with the IRS to pay the liability." Id., ¶ 4.  Additionally, Mr. Garr reflects, "In retrospect, it is clear to me that [Petitioner] believed that his company had filed the appropriate tax returns, that he took the delinquency seriously, and that he wanted to pay what was owed." Id., at ¶ 6.

Certainly, all of the above demonstrates that Petitioner relied on the professional advice of three experienced and reputable attorneys and an IRS auditor to delay his federal payroll tax payment until he was assessed by the IRS in a civil matter pursuant to 26 U.S.C. § 6672.  The above clearly and convincingly demonstrates that Petitioner did not willfully (voluntarily and intentionally violate a known duty) and that no reasonable juror could find that Petitioner willfully failed to file or willfully failed to pay the IRS the payroll taxes owed.

It is no surprise that all of these professionals believed that Petitioner would only be assessed under 26 U.S.C. § 6672 -- a civil matter -- because, as one federal court has explained, "Typically, the government responds to failure to pay withholding taxes by initiating a civil action

18

under 26 U.S.C. § 6672. Section 6672 provides that any person required to collect, truthfully account for and pay over any tax who willfully fails to do so, is liable to the government for the full amount of the unpaid tax plus interest and a penalty equal to the amount of the tax owed." <u>United States v. Brennick</u>, 949 F.Supp. 32, 37 (D.Ma. Oct. 1, 1996).

This same court then emphasized, "<u>Rarely</u> is the failure to pay trust fund taxes a criminal offense, as the [US Guidelines] Application Note to § 2T1.6 states ('The offense [violating 26 U.S.C. § 7202 by failing to truthfully account for an pay over employment taxes] is a felony that is <u>infrequently prosecuted</u>.')." <u>Id</u>. (emphasis added)(modification in original).

Specifically, the court recognized:

> The paradigmatic case of prosecution for failure to account for and pay over taxes, however, is civil: a company does not pay over the taxes because it is failing, because of an economic downturn; the proprietor uses the funds in question for the business expenses rather than paying them over to the government, preferring other creditors to the government. <u>His intention is not to permanently deprive the government of the taxes owed</u>; it is his intention to pay the IRS when the business prospects are brighter.

<u>Brennick</u>, at 36.

The situation described in <u>Brennick</u> is exactly what happened here. During the most severe economic depression since the 1930s, Petitioner followed the advice of the Assistant Attorney General of the Department of Justice Tax Division to pay the Maryland State payroll taxes instead of the federal payroll taxes. Petitioner relied on several respected professionals to wait until the IRS initiated the civil action under § 6672. It was never his intent to deprive the government of the funds permanently. This matter should never have progressed to one of a criminal nature under § 7202 based on the merits and circumstances of the case.

But for the selective prosecution of top Republican media firms in Washington, DC, the ineffectiveness of Counsel Cono Namorato, and Namorato's abhorrent undisclosed conflict of interest, this case would never have progressed beyond a civil action under § 6672, and the owed payroll taxes would have long-since been paid.

## CONCLUSION

For all the reasons listed herein, Petitioner humbly prays that this Honorable Court grant an evidentiary hearing to determine the prosecutor's selective prosecution, counsel Namorato's ineffective assistance of counsel, and his actual innocence, or any other action the Court feels appropriate.

Respectfully submitted,

_____
KEVIN DUANE BERTRAM