UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | Case: 1:15-cr-00012-001 |
| v. | : | HON. AMY BERMAN JACKSON |
| | : | |
| KEVIN BERTRAM, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT/PETITIONER'S *PRO SE* SECTION 2255 MOTION**

The United States of America, by and through undersigned counsel, respectfully submits this response in opposition to defendant/petitioner's (hereafter referred to as defendant's) *pro se* motion under 28 U.S.C. § 2255 (Doc.# 24) filed on May 10, 2016. Two of the defendant's three claims (selective prosecution and lack of willfulness) are waived pursuant to the plea agreement. His remaining ineffective assistance claim is legally meritless because it is about an attorney who did not represent him at his plea or sentencing. Accordingly, the Court should deny the motion and the defendant's request for an evidentiary hearing.

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

On January 26, 2015, the government filed an information (Doc.#1) in this case alleging that the defendant operated a business called Distributive Networks, LLC in the District of Columbia and willfully failed to pay over income and Federal Insurance Contributions Act (FICA) taxes that, from 2007 through 2009 he deducted from the wages of his workers. The single count information charged the defendant with misconduct in violation of 26 U.S.C. § 7202 which prohibits, *inter alia*, willfully failing to pay over to the Internal Revenue Service (IRS) such tax withholdings.

On January 26, 2015, the defendant signed a Statement of Offense admitting that he "was a responsible person at Distributive Networks because he had authority to exercise significant control over the business's financial affairs." Doc.#5 at 2.  Specifically, the defendant admitted in writing that he "had the ultimate authority to hire and fire employees and to cause the company's bills to be paid" and that he "controlled the company's bank accounts." Id.  He specified that, "for the quarter ending December 2007 through the quarter ending June 2009" he caused a payroll service to withhold federal income taxes and FICA taxes from the wages of the employees of Distributive Networks" but that he "failed to truthfully account for the federal income taxes and FICA taxes withheld from the wages of Distributive Networks' employees." Id.  The defendant did so by failing "to file Forms 941 with the IRS on or before the dates they were due." Id.  The defendant further admitted that he "willfully failed to pay over $927,921.78 in payroll taxes due and owing to the IRS." Id.  Notably, the defendant declared that he "was aware of his legal duty to account for and pay over payroll taxes" and that he "knowingly and voluntarily violated this legal duty by, among other things, failing to pay over payroll taxes to the IRS." Id. at 3.

The defendant signed the Statement of Offense under penalty of perjury declaring it to be "a true and accurate statement of facts" that "accurately sets forth my conduct in connection with this case." Id.  On February 10, 2015, the defendant initialed and dated each of the three pages of the Statement of Offense. Id.

On February 10, 2015, the defendant appeared before this Court with his attorney of record, Ms. Jessie Liu, to be arraigned on the charged § 7202 count.  During the same hearing, he entered a plea of guilty.  In those proceedings, the defendant was placed under oath and was thoroughly examined by the Court on topics related to his plea of guilty.  At the outset, the Court

questioned the defendant as follows regarding his knowledge of the charge and his satisfaction with the services of Ms. Liu:

> THE COURT: All right. Have you received a copy of the information, the charge that's pending against you in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And have you had the opportunity to discuss the charge and the case in general with your attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you completely satisfied with the services of your lawyer in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And have you had enough time to talk with her and discuss the case and the plea offer and whether or not you should accept it?
>
> THE DEFENDANT: Yes.    Plea Hr'g Tr. 6, Feb. 10, 2015

During the hearing, the defendant expressly waived his indictment rights and his trial rights. Id. at 6-9. The defendant and Ms. Liu, in her capacity as "Counsel for Defendant," also executed a Waiver of Indictment (Doc.#2) and Waiver of Trial by Jury (Doc.#3) which were filed on the docket of this case.

The plea agreement (Doc. 4) was executed by the attorney for the government. Id. at 9. The defendant signed the "Defendant's Acceptance" of the plea agreement on January 26, 2015, representing that

> I have read every page of this Agreement and have discussed it with my attorney, Jessie K. Liu. I fully understand this Agreement and agree to it without

reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Agreement fully.  I am pleading guilty because I am in fact guilty of the offenses identified in this Agreement. I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this Agreement. I am satisfied with the legal services provided by my attorney in connection with this Agreement and matters related to it.  Id. at 10.

The defendant further initialed and dated every page of the plea agreement.  Id. Ms. Liu also signed the Plea Agreement as "Attorney for Defendant" asserting that "I have read every page of this Agreement, reviewed this Agreement with my client, Kevin Bertram, and fully discussed the provisions of this Agreement with my client."  Id.  Ms. Liu further asserted that "[t]hese pages accurately and completely set forth the entire Agreement. I concur in my client's desire to plead guilty as set forth in this Agreement."  Id.

The Court orally reviewed the plea agreement with the defendant.  Of particular significance, the plea agreement contains certain waivers by the defendant, including waivers of rights to collaterally attack his conviction and sentence as follows:

> Your client also waives any right to challenge the conviction entered or sentence imposed under this Agreement or otherwise attempt to modify or change the sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 or Federal

Rule of Civil Procedure 60(h), except to the extent such a motion is based on newly discovered evidence or on a claim that your client received ineffective assistance of counsel in entering into this Agreement or in connection with sentencing. Doc. #4 at 7.

On the issue of this waiver of collateral attack, the Court engaged in a colloquy with the defendant as follows:

> THE COURT: Okay. Do you also understand, then, one of the things you've agreed to is you're not going to be able to come back later under Federal Rule of Civil Procedure 60(b) or 28 U.S. Code § 2255 and attack this conviction and say there was something wrong with it, unless there is newly discovered evidence or your attorney was ineffective in representing you. Otherwise, this conviction is going to stand for the future. You understand that?
>
> THE DEFENDANT: Yes.    Plea Hr'g Tr. 11

The Court then had the attorney for the government describe the facts of the case and admonished the defendant to "listen very carefully while the prosecutor talks because when she's through, I'm going to ask if everything she said is true and accurate." Id. at 12.   Among other things, the attorney for the government stated that

> The proof at trial would establish that the defendant was aware of his legal duty to account for and pay over payroll taxes and that the defendant knowingly and voluntarily violated this legal duty by, among other things, failing to pay over payroll taxes to the IRS. And the proof would establish that the defendant's conduct resulted in a tax loss to the Internal Revenue Service of $927,921.78.  Id. at 14.

Having heard the description of his misconduct by the prosecution, the defendant was asked by the Court "is what the prosecutor just told me a true and accurate statement of what you did in this case?" Id. at 15.  The defendant answered, "Yes."  Id.

The Court then further examined the defendant regarding the circumstances of his plea of guilty as follows:

> THE COURT: Has anybody forced you or threatened you or coerced you in any way into entering this plea?
>
> THE DEFENDANT: No.
>
> THE COURT: Now, do you understand that the plea agreement in this case, this letter, was the result of negotiations between your lawyer and the government's counsel?
>
> THE DEFENDANT: Yes.  Id. at 22.

The Court continued questioning of the defendant as follows: "I want to ask you, are you entering this plea of guilty voluntarily and of your own free will, because you are guilty and for no other reason?"  Id. at 23. The defendant answered, "Yes." Id. at 24.

Just before accepting the defendant's plea of guilty, the Court engaged in this final exchange with the defendant:

> THE COURT: Are you ready now to tell me your decision about whether you wish to enter a plea of guilty or whether you wish to go to trial?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And what is your decision?
>
> THE DEFENDANT: I wish to plead guilty.  Id. at 24.

After the foregoing exhaustive inquiry, the Court found the defendant to be "fully competent and capable of making a decision today, that he understands the nature and consequences of what he's doing, that he's acting voluntarily and of his own free will, and that there is an actual factual basis for his plea." Id. Only then, did the Court accept the defendant's plea of guilty. See id.

On May 5, 2015, the defendant appeared with his attorney of record, Ms. Jessie Liu, for sentencing. On that day, the Court sentenced the defendant to 30 months incarceration to be followed by three years of supervised release and to payment of $897, 921 in restitution. Doc.#18. Confronted by the defendant's apparent attempts to blame others for his misconduct, the Court observed at sentencing:

> If this defendant wanted to go to trial and prove this wasn't willful, he had the opportunity to do that and he knowingly waived it. Indeed, my notes reflect that I actually went over that point a second time before asking for and accepting your plea. It is not open to debate. And it's worth pointing out that we're not talking about taxes on the company's earnings or even your own personal income tax liability. This money that was not paid to the federal government was withheld from your own employees' salaries and was supposed to be paid to the IRS on their behalf. So not only are you using corporate bank accounts as a personal piggy bank, but you're using your employees' money and the government's money to support your own level of spending. You said to me, I had less controls on spending in my company, which was growing too fast. But the problem wasn't the lack of controls, the problem was your spending, not somebody else's spending.
> Sent. Hr'g Tr. 16

Defendant took no appeal from his conviction.

## GOVERNING LEGAL PRINCIPLES

By means of collateral attack, the defendant is trying to renege on his guilty plea. The Court should not permit him to evade the consequences of his solemn undertaking. In Tollett v. Henderson, 411 U.S. 258, 267 (1973), the Supreme Court laid out the pertinent principles; Tollett states:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [unconstitutionally deficient].

The Supreme Court likewise declared in Bousley v. United States, 523 U.S. 614, 621 (1998): "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Review of any challenge to a conviction obtained via a guilty plea is "ordinarily confined to whether the ... plea was both counseled and voluntary." United States v. Broce, 488 U.S. 563, 569 (1989).

The District of Columbia Circuit has repeatedly emphasized the finality of guilty pleas. See United States v. Delgado-Garcia, 374 F.3d 1337, 1341 (D.C. Cir. 2004) (guilty pleas that are unconditional knowing and intelligent "waive the pleading defendants' claims of error on appeal, even constitutional claims"); See also United States v. Fitzgerald, 466 F.2d 377, 379

(D.C. Cir. 1972) (voluntary plea of guilty waives all rights and defenses, known or unknown, present or future).

## ARGUMENT

**Selective Prosecution Claim is Barred by the Plea Agreement**

The defendant's first claim is that he was impermissibly selected for prosecution because he ran a "top Republican social media firm." Doc.#24 at 4. At the outset, the government categorically denies any political basis for the prosecution of the defendant. Of course, the Court need not reach the merits of the defendant's fantastic accusation because – in the plea agreement which his attorney and the Court painstakingly reviewed with him – he waived any right to challenge his conviction or sentence "in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255." Doc.#4 at 7. The only claims excepted from the defendant's waiver of collateral attack are those "based on newly discovered evidence or on a claim that your client received ineffective assistance of counsel in entering into this Agreement or in connection with sentencing." Id.

This claim by the defendant does not invoke ineffective assistance exception to his collateral attack waiver. Neither does he claim newly discovered evidence. The plea agreement does not define "newly discovered evidence." See Doc.#4. However, for purposes of defining when a second or successive motion may be certified under section 2255, newly discovered evidence must be that which "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense ...." 28 U.S.C. § 2255(h)(1). The defendant's specious claim that an IRS special agent asked him about "working for the President's enemies" (Doc.#24 at 20) does not qualify under this standard. Moreover, the defendant claims the special agent

9

referred to the "upcoming 2012 election" in questioning him.  Doc.#24 at 20.  Accordingly, even if true, the claims adduced by the defendant are far from "new."  Thus, the defendant's selective prosecution claim should be rejected by the Court as barred by the plea agreement.

**Ineffective Assistance Claim is Meritless**

In his ineffective assistance claim, the defendant accuses one of his former attorneys, Mr. Cono Namorato (of the law firm Caplin and Drysdale) of "failing to investigate" certain matters (Doc.#24 at 5) along with "representing petitioner in spite of an undisclosed conflict of interest." Id.  The defendant makes no such allegations against Ms. Jessie Liu (of the law firm Jenner and Block) the attorney who actually represented him for purposes of his guilty plea and sentencing.

The defendant's own petition lists only "Jessie Liu of Jenner + Block" as representing him at "the preliminary hearing," "arraignment and plea," and "sentencing." Doc.#24 at 10.  The procedural history recited above shows that Ms. Liu was sole counsel of record in this case.  She was the only defense attorney who signed the plea agreement (Doc.#4 at 10), the waiver of indictment (Doc.#2), and the waiver of trial (Doc.#3).

The appearances for the defense on the docket and in court in this matter were only by Ms. Liu. When asked in open court whether he was satisfied with Ms. Liu's representation, the defendant said that he was. See Plea Hr'g Tr. 6.  The only mention of Mr. Namorato in the record of this case was in the defendant's original sentencing memorandum in which Mr. Namorato is referenced in the past tense, "In May 2012, Mr. Bertram retained Caplin & Drysdale to represent him in the criminal investigation . . . Mr. Bertram's legal team was led by Cono Namorato." Doc.#12 at 11.

The defendant's complaints about Mr. Namorato's representation are legally precluded because he pled guilty with the representation of Ms. Liu.  Under Tollett v. Henderson, " a guilty

10

plea represents a break in the chain of events which has preceded it in the criminal process." 411 U.S. 258, 267 (1973). Even assuming *arguendo* that the defendant's complaints about prior counsel's ineffective assistance before his guilty plea had any merit, the proper framework for evaluating his claim for relief is not Strickland v. Washington, 466 U.S. 668, 687–88 (1984), as the defendant contends. This is because the defendant never alleges that his decision to plead guilty was the product of Ms. Liu's unconstitutionally bad advice to plead guilty, nor that there is a reasonable probability that, but for Ms. Liu's errors about whether to plead guilty, defendant would have rejected the plea offer and insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). Fundamentally, the defendant's claim is about prior counsel.

While being represented by Ms. Liu, the defendant chose to enter an unconditional guilty plea. Thus, Strickland does not govern – under this case's circumstances, for the defendant's guilty plea to be overturned. The only question before the Court must be whether the defendant's "break-in-the-chain" guilty plea is valid. The question cannot be about assistance of counsel *before* the guilty plea, which is immaterial. Thus, when adjudicating whether the defendant has articulated a viable claim for relief, the Court should focus not on the competence of counsel in pre-guilty plea context, but on whether defendant has described a fatal flaw in that guilty plea, which is the basis for his conviction. This means that Strickland concepts[1] are irrelevant to the issue before the Court.

---

[1] Even if Mr. Namorato's representation of the defendant during earlier proceedings in this case had been deficient, such deficiency would not have prejudiced the defendant given that the defendant later decided to plead guilty. Therefore, the defendant cannot make out a meritorious claim for relief based upon ineffective assistance of counsel. "In Strickland v. Washington, [466 U.S. 668, 687 (1984)] the Supreme Court established the now-familiar two-part test for ineffective assistance of counsel claims. First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *In re Sealed Case* 488 F.3d 1011, 1016 (D.C. Cir. 2007). Consequently, where, as here, the lack of prejudice is clear, it is unnecessary for the Court to determine whether the defendant would be able to establish deficient performance. The government does not waive the argument, however, that counsel's performance fell well within the proper professional standards of competence.

The focus of a federal habeas inquiry for a case in this posture is the nature of advice counsel in the plea context and voluntariness of the guilty plea, not the existence of any antecedent constitutional infirmity. See Hurlow v. United States, 726 F.3d 958, 966 (7th Cir. 2013) (plea agreement that waives the right to file a § 2255 motion is generally enforceable unless the waiver was involuntary or counsel was ineffective in negotiating the agreement.) In this case, the defendant's complaints are about an attorney who did not represent him at the guilty plea stage. He makes no allegations regarding ineffective assistance by counsel of record, Ms. Liu. Accordingly, the Court should reject the defendant's ineffective assistance claim.

**"Lack of Willfulness" Claim is Barred by the Plea Agreement**

The defendant's final ground for relief under section 2255 is that he did not willfully violate 26 U.S.C. § 7202. Doc.#24 at 5. As with his other grounds, the Court need not reach the merits of the defendant's post-plea claim that he did not willfully[2] fail to account for and pay over payroll taxes. The defendant in writing and orally agreed to waive any right to challenge his conviction or sentence "in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255." Doc.#4 at 7. His "lack of willfulness" claim does not fit into either the "newly discovered evidence" or the "ineffective assistance" exceptions to his waiver. Accordingly, the Court should dispense with this claim as waived by the defendant.

**NO EVIDENTIARY HEARING IS NECESSARY**

The decision of whether or not to hold an evidentiary hearing before denying a § 2255 motion is within the sound discretion of the district court. United States v. Sayan, 968 F.2d 55, 66 (D.C.Cir.1992). The defendant is not entitled to an evidentiary hearing in this case because

---

[2] Of course, the defendant's current claims are contradicted by his sworn testimony during the plea hearing where he repeatedly admitted that he acted willfully as detailed above in section on Procedural History and Factual Background.

"the motion and the files and records of the case" conclusively show that he is entitled to no relief. See 28 U.S.C. § 2255(b). Two of the defendant's claims are barred by his plea agreement. The third consists of allegations about an attorney who did not represent him when he pled guilty. Given these circumstances, it would be a waste of judicial resources to grant the defendant an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, the government requests that the Court summarily deny the defendant's motion under 28 USC § 2255.

        Respectfully submitted,

        ROSEMARY PAGUNI
        Chief, Northern Criminal Enforcement Section
        U.S. Department of Justice
        Tax Division

By:   /s/ Jeffrey A. McLellan
       JEFFREY A. MCLELLAN
       Trial Attorney
       U.S. Department of Justice, Tax Division
       P.O. Box 972
       Washington, DC 20044
       Telephone: (202) 514-5181 (McLellan)
       Fax: (202) 514-8455
       jeffrey.a.mclellan@usdoj.gov


## CERTIFICATE OF SERVICE

      I hereby certify that on July 1, 2016, a copy of the foregoing document has been sent via U.S. Mail to the pro se defendant:

KEVIN BERTRAM
R44918-083
PETERSBURG LOW
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 1000
PETERSBURG, VA 23804-1000

    /s/ Jeffrey A. McLellan
    Trial Attorney