IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEVIN DUANE BERTRAM,            )    Case No. 1:15-cr-00012-001  (ABJ)
    Petitioner,                 )
        v.                      )    **FILED**
UNITED STATES OF AMERICA,       )
    Respondent.                 )    **AUG 1 0 2016**

Clerk, U.S. District and
Bankruptcy Courts

MEMORANDUM SUPPORTING PETITIONER'S ABILITY TO BRING AN INEFFECTIVE
ASSISTANCE OF COUNSEL CLAIM REGARDING COUNSEL THAT WAS INVOLVED IN
BUT DID NOT APPEAR AS "COUNSEL" IN THE PROCEEDING BEFORE THIS COURT

On July 19, 2016, the Court ordered Petitioner to produce the Letter of
Engagement from Jenner & Block (See Exhibit 1) and to brief the legal issue
of whether an ineffective assistance of counsel claim under section 2255 and
Petitioner's plea agreement can be based on acts or omissions of an attorney
who was engaged by Petitioner but was not "counsel" in the proceeding before
the Court.

First, as expressly conceded by the Government's Response, Petitioner's
ineffective assistance of counsel claims are permitted within the scope of
Petitioner's plea agreement. See [Doc. No. 26, pp. 1 and 13]. For the
Government to argue otherwise would contravene the October 14, 2014
Memorandum for All Federal Prosecutors by former Deputy Attorney General
James M. Cole, which explicitly states:

> Federal prosecutors should no longer seek plea agreements to have a
> defendant waive claims of ineffective assistance of counsel whether
> those claims are made on collateral attack or, when permitted by circuit
> law, made on direct appeal. For cases in which a defendant's
> ineffective assistance of counsel claim would be barred by a previously
> executed waiver, prosecutors should decline to enforce the waiver when
> defense counsel rendered ineffective assistance resulting in prejudice
> or when the defendant's ineffective assistance claim raises a serious
> debatable issue that a court should resolve. (Exhibit 2).



Additionally, as Petitioner explained in his initial petition, the only
reason he accepted the plea offered by the Government was because Counsel
Namorato failed to investigate critical witnesses and evidence -- as
presented and detailed in the Memorandum of Petitioner's initial § 2255
petition [Doc. No. 24, pp. 9-12] -- a failure most likely precipitated by the
conflict of interest the Government has already conceded under Federal Rule

of Civil Procedure 8(b)(6).

Next, as previously demonstrated, Petitioner retained Counsel Cono Namorato of Caplin & Drysdale on May 30, 2012, and Mr. Namorato's billable responsibilities included:

> legal research; factual investigation; drafting of letters, pleadings, briefs and other documents; telephone and office conferences with a client and counsel, witnesses, consultants, court and other governmental personnel and others; ... waiting time in court; and time in depositions and other discovery proceedings. (Exhibit 3, p. 3).

Namorato's Engagement Letter also stipulated that the engagement would be "terminated upon completion of any services that [the firm] has been retained to perform." (Exhibit 3, p. 5).

Namorato's representation not only included the initial conference with the Department of Justice on August 28, 2013 -- attended by US Trial Attorney for the DOJ Tax Division Jeffrey McLellan, US Trial Attorney for the DOJ Tax Division Melissa Siskind, IRS Special Agent Emily Taylor, as well as Cono Namorato and Matthew Hicks of Caplin & Drysdale (Exhibit 4, ¶ 3) -- but Namorato's representation did not end until June 8, 2015 (See [Doc. No. 27, p. 5 and Ex. 2]) -- just weeks after Petitioner was sentenced. As noted in Petitioner's Reply to the Government's Response, Namorato "participated in conversations with Jessie Liu and Thomas Perrelli about the Sentencing Memorandum in preparation of Petitioner's sentencing on May 5, 2015." [Doc. No. 27, p. 15]. At all times, Namorato was a part of the "defense team."

As for the rest of the defense team, Jenner & Block's scope of representation -- which began on February 10, 2014 -- was expressly:

> limited to counseling [Petitioner] regarding a tax investigation of [Petitioner] and Distributive Networks, LLC, by the Department of Justice and the Internal Revenue Service ('this matter'). Jenner & Block will not appear on [Petitioner's] behalf before any investigative, regulatory, or adjudicatory body, including but not limited to the U.S. Department of Justice, the Internal Revenue Service, or any federal or state court." (Exhibit 1, p. 1)(emphasis added).

Although Jenner & Block acted beyond its agreed scope of representation by attending Petitioner's arraignment and sentencing, had Petitioner chosen

2

to proceed to trial, Jenner & Block would not have represented him, and he would have been forced either to proceed with Namorato or engage other counsel for trial. (Exhibit 4, ¶ 6).

The question on which this Court requested briefing is _identical_ to the question considered by the neighboring Fourth Circuit Court of Appeals in _United States v. Tatum_, 943 F.2d 370, 378-79 (1991) and again in _Rubin v. Gee_, 292 F.3d 396, 406 (4th Cir. 2002). As the Fourth Circuit explained:

> [W]e now analyze whether Gavin's [(the first attorney hired)] representation of Tatum [(the defendant)] denied Tatum his right to the effective assistance of counsel. Resolution of that question can lead to the yet more difficult one of whether Kemp's [(second attorney hired)] representation of Tatum healed the adverse effects, if any, of Gavin's failures.

_Tatum_, at 376.

In _Tatum_, the defendant retained David Gavin to represent him. At the time of Tatum's arraignment, the United States Attorney wrote to Gavin and raised the possibility of his conflict of interest. Subsequently — but still several months before trial — Paul F. Kemp entered his appearance as counsel for Tatum. Kemp took the lead from that moment through Tatum's trial, and later — when Tatum argued that his trial had been tainted by Gavin's conflict of interest, the Government raised the same argument it does here: Gavin did not represent Tatum at trial and, at most, served as a consultant to Kemp. Thus, the Government argued, that — even if Gavin's representation was tainted by a conflict of interest — Tatum's claim was not against the counsel of record and therefore could not be advanced.

The Fourth Circuit "conclude[d] that the presentation of Tatum's defense was the product of both Gavin and Kemp, even though their contributions may have varied in function and degree. This joint effort by the two, when one was so completely disqualified, caused an unwitting, but disqualifying, taint to the other." _Tatum_, at 378.

Importantly, the Fourth Circuit emphasized:

Even if we were to consider only Gavin's direct representation of Tatum,

our conclusions in this case would not be different. Before Kemp entered his appearance for Tatum, Gavin's representation resulted in an actual lapse, because he did not think to invite the government to alter the focus of its investigation from Tatum ... . As observed by the Supreme Court in Holloway [v. Arkansas, 435 U.S. 475 (1978)], a conflict of interest has constitutionally detrimental effects before trial, just as during trial, "because of what it tends to prevent the attorney from doing."

Tatum, at 379 (emphasis added)(quoting Holloway, at 389-90).

The Court further found "that Gavin's conflict of interest adversely affected Tatum's defense when he alone was representing Tatum. While Kemp alone did not represent conflicting interests, his defense of Tatum was tainted by his dependence on Gavin." Tatum, at 379.

Likewise, eleven years later, the Fourth Circuit described Rubin v. Gee, 292 F.3d 396 (2002): "The present case replays Tatum almost exactly." Rubin, at 406. The Government raised the same argument it did in Tatum -- the same argument it raises here -- "that there was no ineffective assistance of counsel because [counsel complained of] did not represent [the defendant] at trial [and was not counsel of record]." Rubin, at 406.

Although three new and independent attorneys were hired by Rubin, the Fourth Circuit held that the:

conflict of interest was so severe that it led to a corruption of the adversarial process that our system relies on to produce just results. It is hard to imagine a case that would call the fundamental fairness of a trial into more question than this one. What happened here should never happen in our system. [The defendant] is entitled to a new trial with conflict-free representation.

Rubin, at 406.

In this case, a conflict of interest infected the whole process for Petitioner, beginning with Namorato and then tainting the attorneys from Jenner & Block, especially because Namorato remained part of the "defense team." At minimum, an evidentiary hearing is warranted. However, because the Government has already conceded under Federal Rule of Civil Procedure 8(b)(6) that Namorato had a conflict of interest and that the conflict affected his performance (See [Doc. No. 27, pp. 5-6]), an evidentiary hearing

is not even necessary, and the petition can be granted on its face.

Courts that have considered this issue have held that "bringing in independent trial counsel does not necessarily cleanse a serious conflict of interest if the conflicted attorney continues as a member of the defense team." Rubin, at 406 (citing Tatum, at 378-79). This reasoning necessarily extends beyond conflict of interest claims to any ineffective assistance of counsel claims where counsel of record relies on counsel who performed deficiently. As detailed in Petitioner's § 2255 petition, a defendant's constitutional right to counsel extends through the investigation of the case all the way up until the plea agreement or -- if the agreement is rejected -- the trial. [Doc. No. 24, pp. 9-10]. When counsel performs deficiently during the pre-trial/pre-plea investigative stage and a defendant -- who would have otherwise proceeded to trial -- accepts a plea agreement as a result, a reset of the process before the "taint" is warranted.

Holding that an ineffective assistance of counsel claim can only be brought against the attorney who participated in the court proceeding would result in several perverse outcomes such as (1) hesitancy of lawyers to assist defendants after deficient counsel; (2) lack of accountability for deficient counsel who would be completely absolved after other counsel takes over the case; and (3) defendants would be forced to proceed with counsel they know to be deficient out of fear that a subsequent attack on counsel's ineffectiveness would be barred.

Here, Jenner & Block relied on Namorato's investigation -- or lack thereof -- when they assisted Petitioner during the plea stage. The taint of Namorato's deficiency has infected the whole process, and -- at minimum -- an evidentiary hearing where Petitioner could call the representatives of Jenner & Block to testify to the hopeless position Namorato's deficient performance left this case in is warranted and necessary to ferret out the depths and effects of Namorato's ineffectiveness.

## CONCLUSION

For all the reasons herein, Petitioner humbly prays that this Honorable Court will grant the relief requested in his § 2255 petition.

Respectfully submitted,

KEVIN DUANE BERTRAM

## VERIFICATION AND CERTIFICATION

I, Kevin Duane Bertram, declare under penalty of perjury that I have personal knowledge of all of the facts herein, that the facts are true and correct to the best of my knowledge as of this day, and that I served a copy of this motion on the US Attorney via First Class US Mail on this day.

DATE: 8 - August - 2016

KEVIN DUANE BERTRAM

## PRISON MAILBOX RULE

I, Kevin Duane Bertram, declare under penalty of perjury that I handed this motion to prison officials — correctly addressed and with sufficient postage — for mailing to the court. See Houston v. Lack, 487 U.S. 267, 277 (1988)(motion deemed filed on the date it is handed to prison officials for mailing to the court).

DATE: 8 - August - 2016

KEVIN DUANE BERTRAM

6

E X H I B I T   1

**JENNER&BLOCK**

February 10, 2014

Jenner & Block LLP
353 N Clark Street
Chicago, IL 60654-3456
Tel 312-222-9350
www.jenner.com

Chicago
Los Angeles
New York
Washington, DC

VIA HAND DELIVERY AND ELECTRONIC MAIL

Mr. Kevin Bertram
P.O. Box 65633
Washington, D.C. 20035
kbertram@gmail.com

Dear Mr. Bertram:

This engagement letter confirms the engagement of Jenner & Block LLP, an Illinois limited liability partnership ("Jenner & Block"), by Kevin Bertram ("you"), and the basis on which Jenner & Block will represent you. We appreciate your confidence and thank you for selecting Jenner & Block as counsel.

In the past, we would at times commence our relationship with new clients with relative informality. However, as our practice and client base grew and the professional standards governing the practice of law became more complex, we adopted the usual practice followed by most other large professional service firms of requiring written engagement letters to be signed by our clients. We have come to believe that all concerned are best served if the matters set forth in this letter are understood and clearly accepted by our clients at the outset. Therefore, we submit this engagement letter for your approval. If you have any questions at all or wish to discuss potential modifications of the provisions of this engagement letter, please call.

1. Scope of Representation. Except as we may agree otherwise in writing, Jenner & Block will be representing only you and will not be representing any of your parents, subsidiaries, affiliated entities, shareholders, partners, directors, officers, agents or employees. Jenner & Block's representation will be limited to counseling you regarding a tax investigation of you and Distributive Networks, LLC, by the U.S. Department of Justice and the Internal Revenue Service ("this matter"). Jenner & Block will not appear on your behalf before any investigative, regulatory, or adjudicatory body, including but not limited to the U.S. Department of Justice, the Internal Revenue Service, or any federal or state court, or enter an appearance in filed litigation before any adjudicatory body, in the absence of a written amendment to this engagement letter or the execution of a new engagement letter expanding the scope of the representation beyond the counseling described above.

Because the representation is limited to a specific undertaking, Jenner & Block's acceptance of this engagement does not involve an undertaking to represent you or your interests in any other matter unless specifically requested by you and agreed by Jenner & Block. For example, Jenner & Block's representation does not include any responsibility to review insurance policies to determine the possibility of insurance coverage, or to notify any insurance carriers about the matter, nor does it include an obligation to furnish advice or notice about your disclosure

Mr. Kevin Bertram
February 10, 2014

obligations concerning the matter under any laws or regulations, including federal securities laws and regulations. Also, after completion of this matter, changes may occur in pertinent laws or regulations that will have an impact upon your future rights and liabilities. Unless you engage us after completion of this matter to provide additional advice on issues arising from this matter, Jenner & Block will have no continuing obligation to advise you with respect to future legal developments.

You may limit or expand the scope of Jenner & Block's representation from time to time, provided that Jenner & Block must agree to any expansion of scope. Except as we may otherwise agree in writing, the terms of this engagement letter apply to all expansions in the scope of representation and to all additional engagements for you which Jenner & Block may undertake.

2.      Fees and Expenses. Our fees are based substantially upon hours charged, recorded in tenth of an hour increments, at Jenner & Block's scheduled rates which are in effect at the time the services are performed. Those scheduled rates are periodically adjusted, generally at the beginning of a calendar year. My present hourly rate is $750.

In addition to fees, our statements include out-of-pocket expenses and internal charges which Jenner & Block incurs in connection with the representation. Also, it is our standard practice to have certain charges for outside retained services (such as for expert witnesses, local counsel and consultants) invoiced directly to you. This letter acknowledges your agreement to pay all such invoices in a timely manner and to hold Jenner & Block harmless from your failure to do so. To the extent such third party charges are paid directly by Jenner & Block, they will be included on our statements.

The fees and other charges for this matter are not in any way contingent upon its successful completion or outcome. Unless we otherwise expressly agree in writing, any advance estimates by us of fees and expenses in connection with services to be performed, and any deposits, retainers or advances which we may require for work to continue are not a limitation nor binding commitment on our part as to the total fees and other charges for which you are responsible under the terms of this engagement.

Jenner & Block's statements are submitted monthly, unless the amount to be billed is not significant. Jenner & Block's statements are due and payable on receipt. If you question or dispute any entry on a statement, we ask that the matter be brought to our attention promptly, so that any disputes or problems can be fairly and amicably resolved in a timely manner. You agree that each statement will be paid within 30 days of the date on which the statement was sent to you. Subject to the requirement of applicable legal ethics rules, Jenner & Block reserves the right to stop work and close the files on all matters being handled for you if any amount invoiced to you is sixty (60) days or more past due. Interest is charged at the rate of 7% per annum from the date of the statement(s) for amounts which are not paid within 60 days of that date. Interest

2

Mr. Kevin Bertram
February 10, 2014

will not be charged to individuals for whom Jenner & Block performs services for personal, family or household matters.

If you substantially fail to fulfill this agreement as to fees and expenses, Jenner & Block may withdraw or seek leave to withdraw from its representation of you. Such withdrawal shall not affect our right to be paid in full for previously incurred but unpaid fees, charges and disbursements.

In certain matters, Jenner & Block may look first to a third party payor (for instance, an insurance company or other potential indemnitor) to pay its fees and expenses for this engagement. In such instances, you remain the client; your decisions concerning the objectives of the representation are controlling; and you are ultimately responsible for the payment of Jenner & Block's statements in the event the third party payor fails to make the required payment(s) in a timely manner

If as a result of the engagement, Jenner & Block is required to produce documents or appear as a witness in connection with any litigation, arbitration, mediation, investigation or regulatory proceeding involving you, you also agree to pay to Jenner & Block the costs and expenses (including attorney and staff time at then scheduled hourly rates) reasonably incurred by Jenner & Block in connection with such a requirement. This provision survives the termination of Jenner & Block's representation of you.

Retainer. Jenner & Block requires a retainer of $5000 for this engagement. The retainer will ordinarily be held until the end of the engagement. It will customarily be applied against Jenner & Block's final statement and any excess will then be refunded to you. Jenner & Block may, however, at any time and at its option apply the retainer to any past due statements in connection with the engagement. Jenner & Block may also require additional retainers from time to time in such amount(s) as Jenner & Block reasonably believes may be necessary to insure payment of its final invoice.

3. Conflicts with Other Clients. As we have discussed, you are aware that the firm represents many other companies and individuals. It is possible that during the time that we are representing you, some of our present or future clients will have disputes or transactions with you, or the Firm will be asked to represent a party to which you are adverse in this matter. You agree that we may continue to represent or may undertake in the future to represent existing or new clients in any matter that is not substantially related to our work for you even if the interests of such clients in those other matters are directly adverse to you or you are adverse to those other clients in this matter. We agree, however, that your prospective consent to conflicting representation contained in the preceding sentence shall not apply in any instance where, as a result of our representation of you, we have obtained proprietary or other confidential information of a nonpublic nature, that, if known to such other client, could be used in any such other matter by such client to your material disadvantage.

3

Mr. Kevin Bertram
February 10, 2014

4. <u>Termination of Representation</u>. Either of us may terminate the engagement at any time for any reason by providing written notice, subject on the part of Jenner & Block to the requirements of applicable legal ethics rules. Unless we agree to render additional legal services for you, Jenner & Block's representation of you and the attorney/client relationship will terminate upon Jenner & Block sending its final statement for attorney services rendered in this matter.

5. <u>Indemnification Against Claims of Nonclients</u>. You agree to, indemnify and hold Jenner & Block harmless for any loss, liability, judgment, costs and expenses (including reasonable attorneys' fees and other costs of defense) resulting from claims made and/or lawsuits filed against Jenner & Block by any third party because of acts or omissions on the part of Jenner & Block in performing services on your behalf. This indemnity agreement relates solely to claims and lawsuits by nonclients and does not prospectively limit Jenner & Block's liability to you in connection with the performance of services on your behalf or alter Jenner & Block's professional obligations to you. This agreement survives the termination of Jenner & Block's representation of you.

6. <u>Document Retention</u>. During the course of the representation, Jenner & Block shall maintain a file on your behalf. The file may include material you have given to us in connection with the representation, as well as other material such as pleadings, transcripts, exhibits, reports, contracts, wills, certificates and other documents as are determined by Jenner & Block to be reasonably necessary to the representation ("Your File"). Your File shall be and remain your property. Jenner & Block may also include in the file its attorney work product, mental impressions and notes (collectively "Work Product"). Unless otherwise agreed between us, the Work Product shall be and remain the property of Jenner & Block.

At the termination of the representation and for a period of seven (7) years thereafter, and provided there are no outstanding unpaid statements for fees and charges owed by you to Jenner & Block, you shall have the right on request to take possession of Your File, not including the Work Product. In such event, Jenner & Block at its expense may make and retain copies of all or portions of Your File. If you do not request possession of Your File within such seven (7) year period, Jenner & Block will have no further responsibility for the retention and maintenance of Your File and may at its option dispose of all or parts of Your File without further notice to you.

7. <u>Approval and Return of Signed Letter and Retainer</u>. Please signify your agreement to the arrangement for legal services described in this letter by returning to us a signed copy of the engagement letter and a retainer of $5000. This agreement may be signed in counterparts, and a PDF signature shall be sufficient to establish execution. In most instances, we will not commence work on your behalf unless and until we have received the signed copy of this engagement letter and the required retainer. If, for some reason, we are required to commence work before you sign and return this letter and the retainer, the effective date of our agreement to provide services will be the date on which we first performed services on your behalf. If you

4

Mr. Kevin Bertram
February 10, 2014

then fail to sign and return the letter and the retainer, we will stop work, close the file and seek to
recover from you the reasonable value of any services performed to that point.

We look forward to working with you.

Sincerely,

Jenner & Block LLP

By: _____
Jessie K. Liu
Partner

Accepted:  Kevin Bertram

By: _____

Date: ___2-11-2014___

5

E X H I B I T   2



**U. S. Department of Justice**

Office of the Deputy Attorney General

---

The Deputy Attorney General                                          *Washington, D.C. 20530*

October 14, 2014

MEMORANDUM FOR ALL FEDERAL PROSECUTORS

FROM:              James M. Cole
                        Deputy Attorney General

SUBJECT:        Department Policy on Waivers of Claims of Ineffective Assistance of
                        Counsel

As we all recognize, the right to effective assistance of counsel is a core value of our Constitution. The Department of Justice has a strong interest in ensuring that individuals facing criminal charges receive effective assistance of counsel so that our adversarial system can function fairly, efficiently, and responsibly. Accordingly, in recent years, the Department has made support of indigent defense a priority. We have worked to ensure that all jurisdictions — federal, state, and local — fulfill their obligations under the Constitution to provide effective assistance of counsel, especially to those who cannot afford an attorney.

When negotiating a plea agreement, the majority of United States Attorney's offices do not seek a waiver of claims of ineffective assistance of counsel. This is true even though the federal courts have uniformly held a defendant may generally waive ineffective assistance claims pertaining to matters other than entry of the plea itself, such as claims related to sentencing. While the Department is confident that a waiver of a claim of ineffective assistance of counsel is both legal and ethical, in order to bring consistency to this practice, and in support of the underlying Sixth Amendment right, we now set forth uniform Department of Justice policies relating to waivers of claims of ineffective assistance of counsel.

Federal prosecutors should no longer seek in plea agreements to have a defendant waive claims of ineffective assistance of counsel whether those claims are made on collateral attack or, when permitted by circuit law, made on direct appeal. For cases in which a defendant's ineffective assistance claim would be barred by a previously executed waiver, prosecutors should decline to enforce the waiver when defense counsel rendered ineffective assistance resulting in prejudice or when the defendant's ineffective assistance claim raises a serious debatable issue that a court should resolve.

As long as prosecutors exempt ineffective-assistance claims from their waiver provisions, they are free to request waivers of appeal and of post-conviction remedies to the full extent permitted by law as a component of plea discussions and agreements.

**E X H I B I T   3**



Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
202-862-5900  202-429-3301 Fax
www.capindrysdale.com

202-862-5090 Direct
cnamorato@capdale.com

May 30, 2012

Mr. Kevin Bertram
2937 Cathedral Avenue, N.W.
Washington, DC  20008

Dear Mr. Bertram:

The District of Columbia Rules of Professional Conduct require law firms to set out in writing at the beginning of a new representation the basis or rate of the fees to be charged. The purpose of this letter is to explain our fee arrangements and confirm the terms and conditions under which Caplin & Drysdale will represent you in connection with your tax matter.

The enclosed General Provisions explain our billing practices for fees and expenses. Our fees will be based primarily on the hourly billing rates established by the Firm's Management Committee for each attorney, which currently range from $245 an hour for new associates to $1,100 an hour for senior partners. My time is currently billed at $825 per hour, and Matthew Hicks' time at $475 per hour. Although I will be the one primarily responsible for this engagement, portions of the matter may be handled by other firm lawyers. In addition to fees, we shall be entitled to payment or reimbursement for costs and expenses as set forth in the General Provisions.

We will require a $25,000.00 retainer, for which a statement is enclosed. Unless you agree otherwise, we are required to hold the retainer in escrow, and our fees and expenses will be withdrawn only as they are incurred. In general, funds held in escrow remain your property and are protected from a lawyer's creditors, but you are taxable on any interest income related to the funds in escrow and would need to provide us with a Form W-9. For ease of administration, therefore, we would prefer to deposit the retainer into the firm's regular operating account where it will be treated as the firm's property upon receipt. In either case, we will bill you at the end of each month for the actual time charges and expenses incurred during that month, and you will need to pay that bill in full to restore your retainer to $25,000.00. At the end of the representation, we will apply the final bill and any outstanding balance on prior bills against the retainer and refund the balance, if any, to you. By signing below, you agree that we may deposit the

Caplin&Drysdale
c h a r t e r e d

- 2 -

retainer into the firm's operating account. If you have any questions about this, please contact me.

If the foregoing correctly reflects your understanding of the terms and conditions of our retention, please indicate your acceptance by executing the enclosed copy of this letter in the space provided and returning it to my office.

We are pleased to have this opportunity to work with you.

Very truly yours,

Cono R. Namorato

Enclosures

AGREED TO AND ACCEPTED:

By:_____
        Kevin Bertram

Date: _____

CAPLIN & DRYSDALE, CHARTERED

Representation and Fees

## GENERAL PROVISIONS

Except as modified by the accompanying engagement letter, the following apply to the relationship between Caplin & Drysdale and our clients:

1.      Fees for services rendered will be based on the reasonable value of those services as determined in accordance with the American Bar Association and District of Columbia Rules of Professional Conduct. Such fees will be based primarily on our established hourly billing rates subject to adjustment from time to time by the firm. The billing rate for each attorney depends generally on that attorney's expertise and experience, and these rates are adjusted from time to time by the firm. The time for which a client will be charged will include, but will not be limited to, legal research; factual investigation; drafting of letters, pleadings, briefs and other documents; telephone and office conferences with a client and counsel, witnesses, consultants, court and other governmental personnel and others; conferences among our lawyers and staff on the client's case; responding to clients' requests for us to provide information to their auditors in connection with reviews or audits of financial statements; travel time; waiting time in court; and time in depositions and other discovery proceedings. In determining our final fees, including whether in view of the final result a premium is appropriate, subject to approval by the client, we consider the novelty and difficulty of the legal issues involved, the responsibility assumed, the benefit accruing to the client and any unforeseen circumstances which arose during the course of the representation.

2.      Where appropriate, we may utilize paralegal personnel. Time devoted by paralegals to client matters is charged at established hourly billing rates which also are subject to adjustment from time to time by the firm.

3.      In addition to our fees, we will be entitled to payment or reimbursement for costs and expenses incurred such as photocopying, local messenger and intercity delivery service, computerized research, travel (including mileage, parking, airfare, lodging, meals and ground transportation), long-distance telephone, telecopying, support staff overtime, court and agency costs and filing fees. Certain of such items may be charged at a rate computed to cover our direct cost and overhead. Unless special arrangements are made at the outset, fees and expenses of experts, investigators, accountants, consultants, court reporters, and other outside providers of personal services will not be paid by us and will be the responsibility of, and billed directly to, the client.

4.      Although we may from time to time, at a client's request and for the client's convenience, furnish estimates of fees or costs that we anticipate will be incurred, these estimates are subject to unforeseen circumstances and are by their nature inexact. We will not be bound by any estimates except to the extent expressly set forth in the engagement letter.

5.      Fees and expenses will be billed monthly and are payable upon presentation. We expect prompt payment. We reserve the right to defer providing additional services or to discontinue our representation if billed amounts are not paid when due.

6.      A client has the right at any time to terminate our services and representation by notice to the firm. Such termination does not, however, relieve the client of the obligation to pay for all services rendered and expenses paid or incurred on behalf of the client prior to the date of such termination, or in connection with it.

- 2 -

7.    We reserve the right to withdraw from our representation if, among other things, the client fails to honor the terms of the engagement letter, the client fails to cooperate or to follow our advice on a material matter, or any fact or circumstance which would or could, in our view, render our continuing representation unlawful or unethical.  If we elect to withdraw, the client will take all steps necessary to free us of any obligation to perform further services, including the execution of any documents necessary to complete our withdrawal, and we will be entitled to be paid for all services rendered and costs and expenses paid or incurred on behalf of the client to the date of withdrawal.

8.    Scope of Representation.  Unless otherwise noted, our client for purposes of this representation is the person or entity to whom the accompanying engagement letter is addressed, and not any affiliates of such person or entity (i.e., if you are a corporation or partnership, any parents, subsidiaries, employees, officers, directors, shareholders, or partners of such corporation or partnership or commonly owned partnerships or corporations; or if you are a nonprofit organization, any members, employees, officers or directors of the organization; if you are an association with members, any of your members; if you are an individual, your spouse, any of your relatives, or others whose interests may be affected by the representation).  For conflict of interest purposes, we may represent another client with interests adverse to any such affiliate.

We are a relatively large law firm and we represent many other companies and individuals in a variety of specific, project-based matters, and not usually as general outside counsel.  It is possible that during the course of the representation, other present or future clients will have disputes with you.  As a condition to our undertaking the current representation, it is agreed that we may continue to represent or in the future undertake to represent existing or new clients in matters not substantially related to the current representation, even if the interests of such other clients are directly adverse to your interests.  This consent shall not apply in the event that during the course of our representation we have obtained sensitive, proprietary, or other confidential information, of a non-public nature, that could be used to the advantage of such other client or to your disadvantage in any matter for which we are approached for representation by that client.

9.    Conclusion of Representation.  It is our policy that the attorney-client relationship is terminated upon completion of any services that we have been retained to perform.  If you later retain us to perform further or additional services, our attorney-client relationship will be revived subject to these terms of engagement, as they may be supplemented or changed at that time.  With respect to document retention, when our engagement on any matter is completed, we close our active files, return original documents obtained from the client to the client, and store copies of documents for five years, after which, unless different arrangements are made, we destroy our closed files.



**Caplin & Drysdale**
ATTORNEYS

Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
202-862-5000 202-429-3301 Fax
www.caplindrysdale.com

Kevin Bertram                                                    May 30, 2012
2937 Cathedral Avenue, N.W.
Washington, DC  20008

| | |
|---|---|
| Rolling Retainer for Professional Services | $25,000.00 |
| Total Balance Due | $25,000.00 |

WIRE TRANSFER INFO:

ACCOUNT NAME:  CAPLIN & DRYSDALE, CHARTERED
BANK OF AMERICA
15TH & PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20013
ACCOUNT NO.:  0019 2081 4809
FEDERAL ROUTING NO.:  026009593

674214

E X H I B I T   4

STATE OF VIRGINIA
COUNTY OF PRINCE GEORGE

### AFFIDAVIT OF KEVIN DUANE BERTRAM

I, Kevin Duane Bertram, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have personal knowledge of all of the facts herein, that they are true and correct to the best of my knowledge as of the date this document is executed, and that I voluntarily attest to these facts with a sound mind.

1. I retained Caplin & Drysdale and Jenner & Block to assist me in the matters surrounding this case.

2. I initially engaged Cono Namorato of the firm Caplin & Drysdale to represent me on May 30, 2012.

3. The initial conference between Caplin & Drysdale on my behalf and the Department of Justice was held on August 28, 2013, and five parties were present: US Trial Attorney for the DOJ Tax Division Jeffrey McLellan, US Trial Attorney for the DOJ Tax Division Melissa Siskand, IRS Special Agent Emily Taylor, Cono Namorato of Caplin & Drysdale, and Matthew Hicks of Caplin & Drysdale.

4. At this conference, a possible plea agreement within a sentence range of 27 to 33 months imprisonment was discussed among the parties.

5. I have certain non-public evidence with handwritten notes to prove ¶s 3 and 4 above, but I am concerned that submitting them to the Court without an order to do so would waive my attorney-client privilege, a right that I do not wish to waive. I am happy to provide the documentation should the Court order the production.

6. Jenner & Block represented me beyond their scope of representation when they appeared on my behalf during the final stages of the plea agreement and my arraignment. However, I understand that -- in spite of Jenner & Block's willingness to help me beyond the agreed scope of representation -- this assistance would not have extended to trial, and I would have been forced to proceed with Cono Namorato or engage other counsel had I chosen to proceed to trial.

DATED: 8-August-2016

KEVIN DUANE BERTRAM

Kevin Bertram
44918-083
Federal Correctional
Complex Petersburg
PO Box 1000
Petersburg, VA 23804




⇔44918-083⇔
Us District Court
333 Constitution AVE NW
Washington, DC 20001
United States

US District Court
333 Constitution Avenue, NW
Washington, DC 20001