## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————
                                                        )
UNITED STATES OF AMERICA,                               )
                                                        )
         v.                                             )          Crim. Action No. 15-0012 (ABJ)
                                                        )
KEVIN BERTRAM,                                          )
                                                        )
                              Defendant.                )
———————————————————————)

## MEMORANDUM OPINION

On May 5, 2015, defendant Kevin Duane Bertram was sentenced to thirty months'
incarceration after he pleaded guilty to willfully failing to pay the federal income taxes that he
withheld from his employees' paychecks.  *See* J. in a Criminal Case [Dkt. # 18] ("J&C") at 1–2.
He now seeks to vacate that sentence pursuant to 28 U.S.C. § 2255.  Mot. Under 28 U.S.C. § 2255
to Vacate, Set Aside, or Correct Sentence [Dkt. # 24] ("Def.'s Mot.").  Defendant alleges that he
was the victim of selective prosecution, that his legal counsel was constitutionally deficient, and
that he is actually innocent, and he petitions the Court to hold an evidentiary hearing to investigate
these claims.  *See* Mem. in Supp. of Def.'s Mot. [Dkt. # 24] ("Def.'s Mem.") at 1, 20.  Because
defendant's selective prosecution and actual innocence claims are barred by his plea agreement,
and because he has not demonstrated that his representation was constitutionally deficient, the
Court will deny the motion without a hearing.

### BACKGROUND

Defendant operated Distributive Networks, a mobile media firm, from 2004 until 2010.
*See* Def.'s Mem. at 1.  Defendant describes that his firm was "widely viewed as the top mobile
media consultant working for Republicans."  *Id.* at 7.  On January 26, 2015, the government
charged the defendant with violating 26 U.S.C. § 7202 by willfully failing to "pay over" to the

Internal Revenue Service ("IRS") federal income tax and Federal Insurance Contributions Act ("FICA") taxes that, from 2007 to 2009, he had deducted from the wages of his workers. Information [Dkt. # 1]; *see also* Gov't's Resp. in Opp. to Def.'s Mot. [Dkt. # 26] ("Gov't's Opp.") at 1; 26 U.S.C. § 7202.

Defendant agreed to plead guilty, and as part of the plea, he swore to an agreed Statement of Offense. *See* Statement of Offense [Dkt. # 5]. In the statement, defendant admitted to keeping the federal income tax and FICA taxes that he withheld from the wages of his employees at Distributive Networks, and failing to submit those taxes to the IRS as required by law. *Id.* ¶ 8. He admitted that he did not truthfully account for the withheld taxes. *Id.* ¶ 9. He admitted that his failure to pay the taxes to the IRS was willful. *Id.* ¶ 10. And he admitted that he was aware of the legal duty to "pay over" those taxes, and that he violated the legal duty knowingly and voluntarily. *Id.* ¶ 11. The defendant's conduct resulted in a total tax loss to the IRS of $927,921.78. *Id.* ¶ 12.

The Court accepted defendant's guilty plea on February 10, 2015. *See* Tr. of Arraignment & Plea Hr'g [Dkt. # 22] ("Plea Hr'g") at 24:19–25. On May 5, 2015, the Court sentenced defendant to thirty months of incarceration, followed by thirty-six months of supervised release. *See* J&C at 2–3. The Court also ordered defendant to pay restitution to the IRS in the amount of $897,921. *Id.* at 5.

Defendant filed this motion under 28 U.S.C. § 2255 on May 10, 2016. Def.'s Mot. The government filed its response in opposition on July 1, 2016, *see* Gov't's Opp., and defendant replied in support of his motion on July 13, 2016. Pet.'s Reply to Gov't's Opp. [Dkt. # 27] ("Def.'s Reply"). On July 19, 2016, the Court ordered both parties to file supplemental memoranda on "the specific legal question of whether an ineffective assistance of counsel claim under section 2255 and this plea agreement can be based on acts or omissions of an attorney who was engaged by

defendant but was not 'counsel' in the proceeding before the Court."   Min. Order (July 19, 2016).
The parties submitted the supplements.   Gov't's Notice Regarding Case Authority [Dkt. # 28]
("Gov't's Suppl."); Mem. Supporting Pet.'s Ability to Bring an Ineffective Assistance of Counsel
Claim [Dkt. # 29] ("Def.'s Suppl.").

### STANDARD OF REVIEW

To prevail on a motion to vacate a sentence under 28 U.S.C. § 2255, a defendant must show
that his "sentence was imposed in violation of the Constitution or laws of the United States, or that
the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of
the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).
The defendant bears the burden of proving his claims by a preponderance of the evidence.  *See*
*United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973).   "Relief under § 2255 is an
extraordinary remedy in light of society's legitimate interest in the finality of judgments."  *United*
*States v. Zakas*, 793 F. Supp. 2d 77, 80 (D.D.C. 2011).   So in a section 2255 proceeding, the
defendant "must clear a significantly higher hurdle than would exist on direct appeal."  *United*
*States v. Frady*, 456 U.S. 152, 166 (1982).   And "[t]o have a plea set aside on a section 2255
petition, the petitioner 'must show that the plea proceeding was tainted by a fundamental defect
which inherently results in a complete miscarriage of justice or an omission inconsistent with the
rudimentary demands of fair procedure.'"  *United States v. Weaver*, 265 F.3d 1074, 1077 (D.C.
Cir. 2001), quoting *United States v. Farley*, 72 F.3d 158, 162 (D.C. Cir. 1995); *see also Hill v.*
*United States*, 368 U.S. 424, 471 (1962).

In considering a section 2255 motion, a district court shall grant a hearing "[u]nless the
motion and the files and records of the case conclusively show that the prisoner is entitled to no
relief."  28 U.S.C. § 2255(b).   The rules governing section 2255 proceedings add that "[i]f it plainly

appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion."   Rules Governing § 2255 Proceedings, Rule 4(b), 28 U.S.C. foll. § 2255.  The decision to grant a hearing "is committed to the district court's discretion."  *United States v. Pollard*, 959 F.2d 1011, 1030–31 (D.C. Cir. 1992). And a "district judge's decision not to hold an evidentiary hearing before denying a § 2255 motion is generally respected as a sound exercise of discretion when the judge denying the § 2255 motion also presided" over the defendant's original proceeding.  *United States v. Morrison*, 98 F.3d 619, 625–26 (D.C. Cir. 1996); *see also United States v. Toms*, 396 F.3d 427, 437 (D.C. Cir. 2005), quoting *Morrison*, 98 F.3d 619 at 625; *United States v. Sayan*, 968 F.2d 55, 66 (D.C. Cir. 1992). Ultimately, the "summary denial of a § 2255 motion is appropriate . . . . when the [claims do] not necessitate the consideration of any information not within the record or within the memory of the judge ruling on the motion."  *Morrison*, 98 F.3d at 626.

## ANALYSIS

Defendant has attacked his conviction on three grounds.  First, he contends that he was the victim of selective prosecution on the basis of his political affiliation.  *See* Def.'s Mem. at 5–9. Second, he argues that he received ineffective assistance of counsel.  *Id.* at 9–13.  Specifically, he claims that one of the attorneys he engaged in connection with the matter failed to investigate necessary witnesses and participated in the representation after he developed a conflict of interest. *Id.*  And third, he claims he is actually innocent of the crime of which he was convicted, because he did not "willfully" violate the tax statutes.  *Id.* at 13–19.

These claims all fail.  Defendant's selective prosecution and actual innocence claims are barred by the express terms of his plea agreement and his sworn admissions on the record.  And his ineffective assistance of counsel claim alleges neither sufficient prejudice nor an actual conflict

of interest.  Because the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b), defendant's motion will be denied without an evidentiary hearing.

I.    **Defendant's selective prosecution and actual innocence claims are barred by his plea agreement.**

Defendant, whose media firm worked at various times for both Democratic and Republican candidates, asserts that he was the victim of selective prosecution because his work during President Obama's administration was for the GOP.[1]  *See, e.g.*, Def.'s Mem. at 8.  In support of this claim, defendant provides the court with seven anecdotal examples of prominent Democratic figures who allegedly committed similar offenses but were not prosecuted.  *See* Def.'s Mem. at 5–6.  He also provides statistics in an effort to show that the felony charged in this case – 26 U.S.C. § 7202 – is "infrequently charged."  *See* U.S. Sentencing Comm'n Guidelines Manual, Ex. 1 to Def.'s Mot. [Dkt. # 24-1]; *see also* Emp't Tax Evasion Statistical Data, Ex. 10 to Def.'s Mot. [Dkt. # 24-1] at 50 (providing statistics showing the relative infrequency of prosecution).  Finally, he contends that the prosecution was permeated with "bad intent" because an IRS agent allegedly inquired as to the political motivations behind defendant's work.  *See* Aff. of Kevin Duane Bertram, Ex. 14 to Def.'s Mot. [Dkt. # 24-2] ¶¶ 10–15.  Defendant also argues that his sentence

---

1    "[T]he decision to prosecute may not be 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights.'"    *Wayte v. United States*, 470 U.S. 598, 608 (1985), quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).  A selective prosecution claim requires proof that the "federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'"  *United States v. Armstrong*, 517 U.S. 456, 465 (1996), quoting *Wayte*, 470 U.S. at 608.

should be vacated because he is actually innocent of the crime of which he was convicted.[2] Def.'s Mem. at 13–14.

The government contends that defendant's plea agreement explicitly bars him from attacking his conviction on these grounds, *see* Gov't's Opp. at 9–10, 12, and its position is well-taken.

The defendant and the government agreed in the plea agreement that:

> [Defendant] also waives any right to challenge the conviction entered or sentence imposed under this Agreement . . . in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 . . . except to the extent such a motion is based on newly discovered evidence or on a claim that [defendant] received ineffective assistance of counsel in entering into this Agreement or in connection with sentencing.

Plea Agreement [Dkt. # 4] at 7.

Defendant's claims of selective prosecution and actual innocence plainly do not implicate any allegation that he received ineffective assistance of counsel. And defendant does not point the Court to any newly discovered evidence as part of either claim.[3] So, under the terms of the plea

---

2    To establish actual innocence, "the [defendant] must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *United States v. Caso*, 723 F.3d 215, 218–19 (D.C. Cir. 2013) (internal quotations omitted), quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998). The Court must ensure that "federal constitutional errors do not result in the incarceration of innocent persons." *United States v. Baxter*, 761 F.3d 17, 27–28 (D.C. Cir. 2014), quoting *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013).

3    Evidence known to the defendant at the time of his proceeding does not constitute newly discovered evidence. *United States v. Ortiz*, 136 F.3d 161, 168 (D.C. Cir. 1998).

agreement, defendant's selective prosecution and actual innocence claims are barred from consideration on collateral review.[4]

And the record makes clear that defendant's plea was knowing, voluntary, and intelligent. Defendant signed the plea agreement, which was made a part of the record, and he specifically affirmed that:

> I have read every page of this Agreement and have discussed it with my attorney, Jessie K. Liu. I fully understand this Agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound.

Plea Agreement at 10. The defendant also initialed and dated each page of the agreement prior to the entry of the plea, and he confirmed that he had done so on the record.

> THE COURT: [O]ne of the things I asked you to do before I took the bench was not only sign the plea agreement, but to initial and date every page. And I don't have you initial and date every page just so I know that all the pages are there. I have you initial and date every page as a sign to me that you read that page and that you know what's on it. So have you had a chance to read this plea offer today and are you comfortable that you've read every paragraph and that you understand everything in it?
>
> THE DEFENDANT: I apologize. I'm not intending to be difficult.
>
> THE COURT: I don't think you're being difficult. I'm trying to make sure that you're prepared.
>
> THE DEFENDANT: Okay, yes.

---

4       Defendant argues that the selective prosecution and actual innocence claims cannot be "procedurally barred." *See* Def.'s Mem. at 3 (claiming that "Ground Three involves an argument establishing Petitioner's actual innocence and thus cannot be procedurally barred in any way and must be adjudicated on the merits."); Def.'s Reply at 6–14. Defendant cites *United States v. Baxter*, 761 F.3d at 27–28, in support of his contention, but that case is inapplicable. It is true that in *Baxter*, the D.C. Circuit reaffirmed the principle that "where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either (1) 'cause' and actual 'prejudice,' or (2) that he is 'actually innocent.'" 761 F.3d at 26, quoting *Bousley*, 523 U.S. at 622. The reasoning in *Baxter* is limited to procedural default – where a defendant could have, but failed to, raise an issue on *direct appeal*. But that is not what the government is arguing here, because defendant did not file a direct appeal. They are instead asking that a plea agreement be enforced to bar collateral attack, except in limited circumstances.

Plea Hr'g at 10:16–11:5.  Finally, as part of the Rule 11 colloquy, the Court made sure that the

defendant understood that he was  waiving his right to attack his conviction as he seeks to do now:

> THE COURT:   Do you also understand, then, one of the things you've
> agreed to is you're not going to be able to come back later under . . . 28
> United States Code § 2255 and attack this conviction and say there was
> something wrong with it, unless there is newly discovered evidence or your
> attorney was ineffective in representing you.  Otherwise, this conviction is
> going to stand for the future.  You understand that?
>
> THE DEFENDANT:  Yes.

Plea Hr'g at 11:6–14.[5]

"Although the analogy may not hold in all respects, plea bargains are essentially contracts."

*Puckett v. United States*, 556 U.S. 129, 137 (2009).  Here, the Court will enforce the agreement,

which was knowing, intelligent, and voluntary.  *See United States v. Adams*, 780 F.3d 1182, 1183

(D.C. Cir. 2015) (enforcing the waiver of a defendant's right to appeal when the waiver is knowing,

intelligent, and voluntary), citing *United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009).

Defendant's argument that he did not commit the offense willfully is also belied by the

sworn representations that are part of the record in this case.  In the Statement of Offense,

defendant acknowledged that he "willfully failed to pay over $927,921.78 in payroll taxes due and

owing to the IRS."  Statement of Offense ¶ 10.  He also "declare[d] under penalty of perjury" that

---

5       Defendant argues that he "had never even heard of a § 2255 . . . at the time of the plea
colloquy," and that his right to file such a motion "had never been explained to him."  Def.'s Reply
at 14.  This argument is belied by the record.  The Court made sure to ask defendant whether he
knowingly waived his right to a section 2255 proceeding except under limited circumstances, Plea
Hr'g at 11:6–14, and it also ensured that defendant had read each page of the plea agreement,
which included the section 2255 waiver provision.  *See* Plea Agreement at 7 ("Waiver of Collateral
Attack").   And defendant specifically initialed and dated the page containing the waiver of
collateral attack provision.  *Id.*  Defendant is not challenging the effectiveness of counsel in
explaining the plea agreement, and the Court must hold him to his word under oath that he read
and understood the plea at the time that it was entered.

the statement of offense was a "true and accurate statement of facts and accurately set for [his]

conduct in connection with this case." *Id.* at 3.

In addition, at the plea hearing, the Court asked the prosecutor to summarize the statement

of offense on the record:

> THE COURT:  Now, I'm going to ask the prosecutor to tell you and tell me
> what happened in this case.  I know it's written down, but I like people to
> put it on the record in the courtroom.  So I'm going to ask you to listen very
> carefully while the prosecutor talks because when she's through, I'm going
> to ask if everything she said is true and accurate.

Plea Hr'g at 12:2–8.  The prosecutor stated, as part of the summary of the case:

> [THE AUSA]:  During this time period, the defendant willfully failed to pay
> over $927,921.78 in payroll taxes that were due and owing to the IRS and
> the defendant failed to make any payments towards the company's payroll
> tax liability during those quarters.  The proof at trial would establish that
> the defendant was aware of his legal duty to account for and pay over
> payroll taxes and that the defendant knowingly and voluntarily violated this
> legal duty by, among other things, failing to pay over payroll taxes to the
> IRS.

*Id.* at 14:8–17.  And the Court then asked defendant, who was under oath:

> THE COURT:  Mr. Bertram, is what the prosecutor just told me a true and
> accurate statement of what you did in this case?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Okay.  And so did you in fact fail to pay the payroll taxes
> that had already been withheld from your employees' wages?
>
> THE DEFENDANT:  That's correct.

*Id.* at 15:3–10.

The Court then directed defendant's attention to the Statement of Offense, and confirmed

that he had reviewed it, initialed every page, and signed it:

> THE COURT:  Now, I have a written document up here that basically is
> what [the prosecutor] just read from that sets forth the facts of the offense
> in writing.  I asked you to read it and sign it before I took the bench.  And

is this your signature on the last page of the Statement of Offense, saying that you read it and you agree with what's set forth in it?

THE DEFENDANT:  Yes.

THE COURT:   And did you initial and date every page this morning, indicating to me that you'd read it?

THE DEFENDANT:  Yes.

Plea Hr'g at 15:15–25.

Finally, the Court asked defendant to confirm that he had decided to plead guilty because he was guilty "and for no other reason":

THE COURT:  Now, after I've asked you all those questions, I want to ask you, are you entering this plea of guilty voluntarily and of your own free will, because you are guilty and for no other reason?

THE DEFENDANT:  Yes.

*Id.* at 23:22–24:1.[6]

So even if defendant had not waived his right to bring an actual innocence claim, there is no basis to vacate his conviction on the grounds that he did not commit a willful violation of the tax laws.

## II.    Defendant's ineffective assistance of counsel claim must fail because he alleges neither sufficient prejudice nor that his attorney had an actual conflict of interest.

Defendant's ineffective assistance of counsel claim raises two issues:  first, defendant claims that the lawyer he initially retained in an effort to forestall this prosecution, Cono Namorato, failed to investigate potential witnesses, and second, he maintains that Mr. Namorato developed a conflict of interest during the representation.  *See* Def.'s Mem. at 10–13.  But Mr. Namorato is not the lawyer who entered an appearance in this matter, the information that Mr. Namorato allegedly

---

6    This admission undermines defendant's claim that he pleaded guilty "only because he caved to the pressure."  Def.'s Reply at 9.

failed to investigate was nonetheless known to the defense team, and Namorato did not actually have a conflict of interest.

As noted above, the plea agreement bars any collateral attack on the conviction except for "a claim that [defendant] received ineffective assistance of counsel in entering into this Agreement or in connection with sentencing."   Plea Agreement at 7.   The first problem with defendant's motion is that it does not set forth errors or omissions committed by "counsel in entering into the plea agreement or in connection with sentencing" because the only counsel of record in the plea and sentencing before the Court was Jessie K. Liu of Jenner & Block, and defendant's complaints do not go to her representation.

While defendant has produced an engagement letter reflecting his retention of Mr. Namorato at the law firm of Caplin & Drysdale in connection with the government's investigation, Ex. 1 to Def.'s Reply [Dkt. # 27], the only lawyer who ever entered an appearance on defendant's behalf in this case was Jessie K. Liu.   *See* Min. Entry (Feb. 10, 2015).   The government extended the plea offer to Ms. Liu.   *See* Plea Agreement.   Ms. Liu was the lawyer who signed the attorney's acknowledgment at the end of the plea agreement:

> I have read every page of this Agreement, reviewed this Agreement with my client, Kevin Bertram, and fully discussed the provisions of this Agreement with my client.   These pages accurately and completely set forth the entire agreement.   I concur in my client's desire to plead guilty as set forth in this Agreement.

*Id.* at 10.  Ms. Liu represented the defendant at both the plea hearing and at sentencing, and no

other attorney appeared and placed his or her name on the record.[7]  And defendant swore under

oath that he was satisfied with the performance of his counsel at the plea hearing.  *See* Plea Hr'g

at 6:13–15.[8]

---

[7]     During the relevant time period, defendant was represented by Mr. Namorato, as well as Jessie Liu and Thomas Perrilli.  Def.'s Reply at 15.  Defendant's legal team involved two well-known law firms, and he argues that a hearing should be held "where counsels Jessie Liu and Thomas Perrilli would fully establish Mr. Namorato's ineffectiveness and the prejudice his ineffectiveness had on the proceedings as a whole, including the plea agreement stage."  *Id.*  He maintains that "the plea negotiations started exclusively through Mr. Namorato," and even after he hired Ms. Liu and Mr. Perrilli, "Namorato's ineffectiveness so tainted the process up until that point that Ms. Liu's and Mr. Perrilli's efforts to remedy Mr. Namorato's errors could not be fruitful."  *Id.* at 15–16.  But defendant does not explain how, even if one assumes that Mr. Namorato had a conflict, defendant could prove prejudice after multiple lawyers from different law firms all counseled him, and defendant made a clearly knowing and voluntary decision to accept the guilty plea.  *See* Plea Hr'g at 6:10–19.  He also provides no evidence to support his claim that the Jenner & Block lawyers would in fact supply the testimony described if they were summoned to a hearing.

[8]     As the Court discussed with defendant:

>       THE COURT:  [H]ave you had the opportunity to discuss the charge and the case in general with your attorney?
>
>       THE DEFENDANT:  Yes.
>
>       THE COURT:  Are you completely satisfied with the services of your lawyer in this case?
>
>       THE DEFENDANT:  Yes.
>
>       THE COURT:  And have you had enough time to talk with her and discuss the case and the plea offer and whether or not you should accept it?
>
>       THE DEFENDANT: Yes.

Plea Hr'g at 6:10–19.

These circumstances give rise to serious questions about whether defendant can claim under section 2255 that his sentence was imposed in violation of the Constitution based on alleged actions or omissions of Mr. Namorato.   The government argues that defendant's ineffective assistance of counsel claim is "legally precluded" because "a guilty plea represents a break in the chain of events which has preceded it in the criminal process."   Gov't's Opp. at 10–11, quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).   In *Tollett*, the Supreme Court announced, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."   *Id.*

*Tollett* does not address the precise circumstances here:   the issue in *Tollett* was whether a defendant who had pled guilty could attack his conviction later on the grounds that there were constitutional infirmities in the proceedings leading up to the plea.   *See id.* at 260.   But as the D.C. Circuit has observed, it stands for the principle that a defendant who has entered a plea "may only attack the voluntary and intelligent character of the guilty plea . . . through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." *United States v. Graves*, 561 F. App'x 1, 3 (D.C. Cir. 2014) citing *Tollett*, 411 U.S. at 267. And here, there is no claim that the representation provided by *counsel*, Ms. Liu, was deficient.[9]

---

9      Defendant, in his supplemental filing, has provided a copy of his engagement letter with Jenner & Block, and that letter expressly recognizes that "Jenner & Block will not appear on [defendant's] behalf before any investigative, regulatory, or adjudicatory body, including . . . any federal or state court . . . in the absence of a written amendment to this engagement letter or the execution of a new engagement letter expanding the scope of the representation." Ex. 1 to Def.'s Suppl. [Dkt. # 29] at 8. So, defendant argues that Jenner & Block, and attorney Jessie Liu, "acted beyond [the] agreed scope of representation by attending Petitioner's arraignment and sentencing." Def.'s Suppl. at 2.   But whatever the engagement letter reveals about the scope of the representation that Jenner & Block initially agreed to provide, the fact of the matter is that only Ms. Liu was counsel of record in this matter, and there are no allegations that she was ineffective in her handling of the plea and the sentencing.

The Sixth Amendment guarantees "the right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984), quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *see* U.S. Const. amend. VI.   A defendant asserting an ineffective assistance of counsel claim "must show (1) 'that counsel's performance was deficient,' and (2) 'that the deficient performance prejudiced the defense.'"   *United States v. Cassell*, 530 F.3d 1009, 1011 (D.C. Cir. 2008), quoting *Strickland*, 466 U.S. at 687; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).   "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."   *Strickland*, 466 U.S. at 700.

To prove deficient performance, the defendant must show "that counsel's representation fell below an objective standard of reasonableness."   *Knowles*, 556 U.S. at 124, quoting *Strickland*, 466 U.S. at 687–88.   "Judicial scrutiny of counsel's performance must be highly deferential."   *Strickland*, 466 U.S. at 689.   And "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."   *Id.*   So "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   *Knowles*, 556 U.S. at 124, quoting *Strickland*, 466 U.S. at 689.   The defendant, then, "must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."   *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986), quoting *Strickland*, 466 U.S. at 688–89.

To establish that counsel's deficient performance was prejudicial, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Strickland*, 466 U.S. at 694.   "A reasonable

probability is a probability sufficient to undermine confidence in the outcome" of the case.  *Id.*  "It is not enough for the defendant to show that errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test."  *Id.* at 693.  Rather, a defendant must establish that "counsel's conduct so undermined the proper functioning of the adversarial process" that the outcome cannot be relied on as just.  *Id.* at 686. The defendant shoulders "the burden of showing, not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions."  *Frady*, 456 U.S. at 170 (emphasis in original).

While the government argues that the *Strickland* test should not be applicable in a plea situation in light of *Tollett*, Gov't Opp. at 10–11, the Supreme Court has already rejected that interpretation and provided specific guidance on how its holding in *Tollett* is to be harmonized with *Strickland*:

> Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970).  As we explained in *Tollett v. Henderson*, 411 U.S. 258 (1973), a defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel  was not within the standards set forth in *McMann*."
>
> Our concern in *McMann v. Richardson* with the quality of counsel's performance in advising a defendant whether to plead guilty stemmed from the more general principle that all "defendants facing felony charges are entitled to the effective assistance of competent counsel." 397 U.S. at 771 & n.14.  Two Terms ago, in *Strickland v. Washington*, 466 U.S. 668 (1984), we adopted a two-part standard for evaluating claims of ineffective assistance of counsel.  There, citing *McMann*, we reiterated that "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  446 U.S. at 687–88.  We also

held, however, that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This additional "prejudice" requirement was based on our conclusion that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691 . . . . [T]he same two-part standard seems to us applicable to ineffective-assistance claims arising out of the plea process . . . .

We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, *supra*, and *McMann v. Richardson*, *supra*. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 56–59 (1985). So the *Strickland* two-pronged rubric governs the

consideration of this motion. And in the Court's view, since the defendant has made absolutely

no showing that the advice he received from counsel of record – Ms. Liu – fell below the *Strickland*

standard, the inquiry could end there.[10]

---

10    The government, in its supplemental filing, points to *United States v. Martini*, 31 F.3d 781 (9th Cir. 1994). Gov't Suppl. at 1–2. In that case, the defendant, who was represented by counsel, sought a second opinion from another lawyer before deciding whether to accept his original counsel's advice to accept a plea deal. *Martini*, 31 F.3d at 782. The second attorney advised the defendant that the case might be "triable." *Id.* Martini, still represented only by the original counsel, decided to reject the offer, was ultimately convicted at trial. *Id.* He then brought an ineffective assistance of counsel claim against the second attorney. The Ninth Circuit held that the Sixth Amendment "does not include the right to receive good advice from every lawyer a criminal defendant consults about his case. Instead, it comprises only the right to the effective assistance of the . . . counsel who represents the criminal defendant and helps to prepare his defense." *Id.* In *Martini*, though, the defendant never formally retained the second lawyer, so while it is instructive in that it focuses on the effectiveness of counsel of record, it is not dispositive.

But even if the Court is bound to go beyond that inquiry to consider defendant's complaints about another lawyer on his team, he has not set forth facts to give rise to a reasonable probability that Mr. Namorato's advice was deficient, or that but for Mr. Namorato's alleged omissions and alleged conflict, he would have gone to trial.

### A.   Defendant cannot show that he was prejudiced by the alleged failure to investigate.

A lawyer owes his or her client several duties, and if a lawyer substantially breaches any of those duties, the lawyer may have rendered a constitutionally deficient performance. *United States v. DeCoster*, 487 F.2d 1197, 1203–04 (D.C. Cir. 1973). These duties include the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*

Even when a failure to investigate constitutes deficient performance, the defendant must still show how counsel's failure to investigate prejudiced the outcome of his case. *United States v. Debango*, 780 F.2d 81, 85 (D.C. Cir. 1986), citing *Strickland*, 466 U.S. at 694. To establish prejudice, the defendant must make "a comprehensive showing as to what [information] the investigation would have produced," and how this information "would have produced a different result." *Askew*, 88 F.3d at 1073, quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987). In determining whether counsel's alleged failure to investigate caused the defendant to plead guilty, the Court's analysis turns on "the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea," which turns "in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill*, 474 U.S. at 59.

The Court will first consider whether the alleged deficiencies here prejudiced the defendant.[11]  "[T]he burden of establishing prejudice falls squarely on [defendant's] shoulders." *United States v. Newman*, 805 F.3d 1143, 1147 (D.C. Cir. 2015).  "To prevail, he must show a reasonable probability that, 'but for counsel's professional errors,' he would have sought to withdraw his plea and the court would have permitted him to do so." *Id.*, quoting *Strickland*, 466 U.S. at 694.  "He must also demonstrate a reasonable probability that after withdrawing his plea he would either have insisted on going to trial or obtained a" more favorable plea deal. *Id.* (internal citations omitted); *see also United States v. Horne*, 987 F.2d 833, 836 (D.C. Cir. 1993) ("[A] defendant must make more than a bare allegation that he 'would have pleaded differently and gone to trial . . . .'"), quoting *Key v. United States*, 806 F.2d 133, 139 (7th Cir. 1986).

Defendant has failed to make the necessary showing.  Defendant complains that Mr. Namorato failed to investigate three potential witnesses:  Frederick Robinson, an IRS auditor who met with defendant in December 2009, *see* Aff. of Kevin Duane Bertram, Ex. 18 to Def.'s Mot. [Dkt. # 24-2] ("Bertram Aff."); Margaret Kavalaris, an attorney who advised defendant as to his debt financing options, *see* Decl. of Margaret H. Kavalaris, Ex. 19 to Def.'s Mot. [Dkt. # 24-2] ("Kavalaris Decl."); and Caroline Ciraolo, an attorney who advised defendant with respect to his payroll tax obligation on at least one occasion.  *See* Def.'s Mem. at 11; Ex. 20 to Def.'s Mot. [Dkt. # 24-2].  Defendant also complains that Mr. Namorato failed to provide allegedly exculpatory information obtained from defendant's payroll company, Paychex, to the IRS.  *See* Aff. of Kevin

---

[11]    *See, e.g.*, *Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."); *In re Sealed Case*, 488 F.3d 1011, 1016 (D.C. Cir. 2007) ("We therefore turn directly to the question of whether the defendant suffered prejudice due to his counsel's deficient performance.").

Duane Bertram, Ex. 17 to Def.'s Mot. [Dkt. # 24-2].  Defendant posits that if he had the benefit of these witnesses' testimony, he would have opted to take his case to trial.  *Id.* ¶ 14.

But the evidence defendant now says would have altered the outcome was information that was well known to him at the time he entered his plea, not information that his first lawyer failed to uncover or share. The proffered Robinson, Kavolaris, and Ciraolo testimony all consist of conversations that the potential witnesses had with the defendant himself.[12]  More important, the information was obviously shared with Ms. Liu during the course of her representation because the exact same information appears in defendant's sentencing memorandum as evidence to be considered in mitigation.  *Compare* Bertram Aff. ¶ 3 (explaining that Robinson, an IRS auditor, informed the defendant that he did not have to pay the delinquent taxes until the IRS designated him a "responsible person" under 26 U.S.C. § 6672); Kavalaris Decl. ¶¶ 4, 7 (affirming that defendant advised Ms. Kavalaris of his intent to "honor[] all federal and state payroll tax obligations," and that he needed to accept the onerous terms of a debt financing opportunity in order to "make payroll taxes."); Def.'s Mem. at 11 (contending that Ms. Ciraolo directed defendant to pay Maryland state payroll taxes in lieu of federal payroll taxes), *with* Def.'s Mem. in Aid of Sentencing [Dkt. # 15] at 7 (discussing advice from Kavalaris), 8 (discussing advice from Ciraolo), 11–12 (discussing conversation with IRS Auditor Robinson); *see also* Ex. 7 to Def.'s Mem. in Aid

---

12     The defendant  confirmed during his plea hearing that he was aware that he had the right to summon these or any other witnesses to Court in his defense.

>      THE COURT:  And do you understand that you would have the right to
>      present your own witnesses and you would have the right to subpoena them
>      and require them to be here and testify in your defense?
>
>      THE DEFENDANT:  Yes.

Plea Hr'g at 8:7–11.

of Sentencing [Dkt. # 15-8] (attaching an identical copy of the Kavalaris declaration that defendant submits in aid of the present motion); Ex. 13 to Def.'s Mem. in Aid of Sentencing [Dkt. # 15-14] (attaching an identical copy of the email summarizing the advice from Ciraolo that defendant submits again now).[13]

In other words, even though before the conviction became final, counsel of record was in possession of the very information defendant now claims Mr. Namorato failed to investigate, defendant made no attempt to withdraw his plea, and indeed, his sentencing memorandum emphasized that the information was simply background which did not negate the willfulness of his criminal conduct. *See* Def.'s Mem. in Aid of Sentencing at 4 ("While Mr. Bertram does not dispute the willfulness of his conduct, several mitigating factors place the nature and circumstances of the offense in context."). And in any event, all of that information did not tend to exonerate defendant. If anything, it showed a pattern of trying to blame his own misconduct on attorneys and accountants. Plainly, defendant cannot establish any likelihood that "'but for counsel's unprofessional errors,' he would have sought to withdraw his plea," *see Newman,* 805 F.3d at 1147, quoting *Strickland,* 466 U.S. at 694, since he did not seek to withdraw his plea. Therefore, defendant cannot establish the necessary prejudice under *Strickland.*

---

13      Defendant also claims that he only became aware in May of 2012 that Paychex had failed to file the necessary paperwork with the IRS. Ex. 14 to Def.'s Mot. ¶¶ 5–7 ("Paychex stopped filing Form 941 in Oct 2007 without every providing any notification to me or to Distributive Networks."). Information concerning Paychex was part of the sentencing package, and that memorandum contradicts defendant's current position. The sentencing memorandum explains that Paychex sent several letters to the defendant in "late 2007" to alert defendant of the problems, but that defendant did "not recall seeing any of this correspondence," and "[e]ven assuming he received it . . . he was distracted by other aspects" of the business. Def.'s Mem. in Aid of Sentencing [Dkt. # 15] at 5–6 & 6 n.1.

### B.   Defendant has not shown that Mr. Namorato had a conflict of interest.

Defendant complains that Mr. Namorato was nominated by President Obama to serve as Assistant Attorney General for the Tax Division of the Justice Department while he was still engaged as a member of the defense team. *See* Def.'s Mem. at 12–13. Defendant insists "that a lawyer attempting to become the head prosecutor of an agency would not want to risk his chance of that desired position by zealously representing his defendant-client who is at odds with the agency." *Id.* at 13. Whatever truth there might be to this statement as a general principle, the record does not indicate that the nomination posed an actual conflict in this case – in which, it bears repeating, another attorney was counsel of record – or that defendant was adversely affected in any way.[14]

"Conflict of interest claims . . . are a 'specific genre' of ineffective assistance of counsel claim." *United States v. Wright*, 745 F.3d 1231, 1233 (D.C. Cir. 2014), quoting *United States v. Bruce*, 89 F.3d 886, 893 (D.C. Cir. 1996). "[A] defendant who asserts a conflict of interest claim . . . in habeas proceedings generally must demonstrate only that an actual conflict of interest adversely affected his lawyer's performance." *Id.*, citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). "An actual conflict of interest exists where a lawyer is 'required to make a choice

---

14      Defendant seems determined to deflect responsibility for his own wrongdoing onto Mr. Namorato, but the last time he invoked Mr. Namorato's name in these proceedings, he sought to benefit from the attorney's recent nomination and cloak himself in his lawyer's fame and reputation. In the sentencing memorandum filed on April 29, 2015, defendant informed the Court that at one time, defendant had retained Caplin & Drysdale to represent him in the criminal investigation. Def.'s Mem. in Aid of Sentencing [Dkt. # 12] at 11. After touting Mr. Namorato's qualifications and specifically mentioning his recent nomination to the Tax Division post, defendant stated that he "believed that his attorneys were working to resolve the outstanding tax liabilities and that he should delay filing all outstanding Form 941s and pay all tax liabilities as part of a comprehensive settlement." *Id.* at 11 & n.4. The next day, the defense filed a motion for leave to file a "corrected" memorandum that would "clarify" certain statements made in the memorandum, Mot. for Leave to File Corrected Def.'s Mem. in Aid of Sentencing [Dkt. # 14], and in the revised version, this reference to Mr. Namorato was completely excised. *See* Def.'s Mem. in Aid of Sentencing at 11.

advancing his own . . . interests to the detriment of his client's interest.'" *United States v. Thomas*, 114 F.3d 228, 252 (D.C. Cir. 1997), quoting *Bruce*, 89 F.3d at 893.   If a defendant can show an actual conflict that adversely affected his attorney's performance, he "typically need not demonstrate the second prong of the *Strickland* test – that the lawyer's deficient performance affected the outcome of the case."  *Wright*, 745 F.3d at 1233, citing *Cuyler*, 446 U.S. at 349–50.

First, the timeline does not support defendant's claim.   Defendant retained Mr. Namorato and Caplin & Drysdale to deal with the tax matter on May 30, 2012.   Aff. of Kevin Duane Bertram, Ex. 17 to Def's Mot. [Dkt. # 24-2] ¶ 1; *see also* Engagement Letter, Ex. 1 to Def.'s Reply [Dkt. # 27] at 1.   Defendant avers that "sometime in 2013," he noticed a "marked decrease in Mr. Namorato's performance."  Ex. 17 to Def.'s Mot. ¶ 6.   According to defendant's own account, he "became so concerned about Mr. Namorato's decrease in representation, that [he] retained attorneys Thomas Perrelli and Jessie Liu of the firm Jenner & Block to assist [him]."  *Id.* ¶ 13. Defendant retained Jenner & Block on February 10, 2014.   Ex. 1 to Def.'s Suppl.   The prosecutor sent the formal plea offer letter to Ms. Liu on January 13, 2015, and she entered her appearance in the case at the arraignment and plea hearing on February 10, 2015.   She was also the lone counsel for the sentencing on May 5, 2015.[15]

The defendant has produced evidence that shows that on February 24, 2015, the President announced his intention to nominate Mr. Namorato to serve as the as the next Assistant Attorney General in charge of the Department of Justice Tax Division. Ex. 22 to Def.'s Mot. [Dkt. # 24-2], and that he was formally nominated on February 25.  *See* U.S. Senate Comm. on the Judiciary, *PN214-114: Cono R. Namorato*, https://www.judiciary.senate.gov/nominations/executive/pn214-

---

13     Caplin & Drysdale formally concluded its representation of the defendant in a letter dated June 8, 2015.  Ex. 2 to Def.'s Reply [Dkt. # 27].

114 (last visited Sept. 19, 2016).   The record does not indicate when Mr. Namorato was first informed that he was under consideration for the post.   Defendant argues, though, that because of "the commonly-known lengthy vetting and selection process," this "period of time tracks too closely to be a mere coincidence," and he speculates that the alleged decline in quality in Mr. Namorato's representation can be attributed to the fact that the attorney had been informed that he was a candidate for the nomination that was announced later.   Def.'s Mem. at 12.

But defendant has indicated that his dissatisfaction began to fester in 2013, and the immediately-preceding Assistant Attorney General, Kathryn Keneally, did not announce her resignation until May 27, 2014.   *See* Press Release, U.S. Dep't of Justice, Assistant Attorney General Kathryn Keneally Announced Her Departure (May 27, 2014), *available at* https://www.justice.gov/opa/pr/assistant-attorney-general-kathryn-keneally-justice-department-s-tax-division-announced-her.   So there is no basis in the record to conclude that the vetting process had already begun by "some point in 2013."   And, even if it had, defendant retained two additional attorneys, from a different law firm, who had their own independent obligations to provide zealous representation, free from any conflict of interest, and it was one of those attorneys who acknowledged the plea agreement and verified that the acceptance of the plea was consistent with her advice.

Furthermore, with respect to the defendant's recent suspicions about Mr. Namorato's divided interests, the Court "generally presume[s] that the lawyer is fully conscious of the overarching duty of complete loyalty to his or her client."   *Burger v. Kemp*, 483 U.S. 776, 784 (1987).   Indeed, "trial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel."   *Cuyler*, 446 U.S. at 347, citing *Holloway v. Arkansas*, 435 U.S. 475, 485–86 (1978).   Merely pointing to Mr. Namorato's potential future employment is not

sufficient to establish an actual conflict of interest.  "[U]ntil . . . a defendant shows that his counsel

*actively represented* conflicting interests, he has not established the constitutional predicate for his

claim of ineffective assistance."  *Mickens v. Taylor*, 535 U.S. 162, 175 (2002) (emphasis in

original), quoting *Cuyler*, 446 U.S. at 350.  And "[i]n order for there to be an actual conflict," the

defendant must show how the attorney was "forced to make a choice advancing his own interest

at the expense of his client's."  *United States v. Taylor*, 139 F.3d 924, 930 (D.C. Cir. 1998).  As

the Seventh Circuit explained in an analogous case:

> We will not indulge the presumption that a defense attorney who is being
> considered for a position as United States Attorney is unable to represent a
> defendant in federal court to the best of his ability and with the defendant's
> best interests in mind.

*United States v. Horton*, 845 F.2d 1414, 1419 (7th Cir. 1988).  Defendant argues that Mr. Namorato

intentionally underperformed in defendant's case in order to win a job at the Department of Justice

but he can point to no facts that would lead to that conclusion.

## III.   Defendant's request for an evidentiary hearing will be denied.

A district court may deny a section 2255 motion without a hearing when "the motion and

files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C.

§ 2255(b).  This decision "is committed to the district court's discretion."  *Pollard*, 959 F.2d at

1031.  And that discretion is given special weight when "the judge denying the [section] 2255

motion also presided over" the defendant's original proceeding.  *Morrison*, 98 F.3d at 625–26.

Here, defendant's motion will be denied without a hearing because the record conclusively

shows he is not entitled to relief.  His plea agreement expressly forecloses his claims of selective

prosecution and actual innocence, because they neither implicate allegations of ineffective

assistance of counsel nor are they based on newly discovered evidence.  And his claim of

ineffective assistance of counsel establishes neither sufficient prejudice nor an actual conflict.  So an evidentiary hearing is unnecessary in this case.

## CONCLUSION

Because the Court finds that defendant's claims of selective prosecution and actual innocence have been barred from collateral attack, and because defendant's claim of ineffective assistance of counsel establishes neither sufficient prejudice nor an actual conflict of interest, it will deny defendant's motion to vacate his sentence.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  September 19, 2016